# 2008 DTA 85

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

EX-AGENTE RAMÓN MUÑIZ JIMÉNEZ, EX-AGENTE
MIGUEL POMALES BONILLA
Recurrentes

v.

POLICÍA DE PUERTO RICO
Recurrida

Núm. KLRA-08-00632

San Juan, Puerto Rico, a 20 de junio de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos el Procurador General, en representación de la Policía de Puerto Rico, solicitando la revisión de una determinación emitida por la Comisión de Investigación, Procesamiento y Apelación, en adelante, C.I.P.A. Mediante dicha decisión, la C.I.P.A. revocó la decisión del Superintendente de la Policía de Puerto Rico de expulsar permanentemente de dicho Cuerpo a Ramón Muñiz Jiménez y Miguel Pomales Bonilla, en adelante, los recurridos.

Por las razones que expresamos a continuación, se confirma la Resolución recurrida.

### I

Conforme se desprende del expediente ante nuestra consideración, a la fecha de su expulsión, los recurridos se encontraban adscritos a la División de Drogas en la Zona de Ponce. A raíz de una Declaración Jurada prestada por el ex- agente José F. Alvarado Ortiz y por hechos alegadamente ocurridos el 7 de mayo de 2000, y luego de la investigación administrativa correspondiente, el Superintendente de la Policía emitió dos (2) Resoluciones de Cargos contra los recurridos. En las mismas, se determinó que los recurridos habían incurrido en las Faltas Graves 1, 24 y 48 [1] del Reglamento de Personal de la Policía de Puerto Rico. Se desprende de ambas determinaciones: [2]

"...

*La Policía de Puerto Rico realizó una investigación administrativa sobre su conducta.*

*Reveló la misma que el 7 de mayo de 2000, a las 12:30 a.m., usted en unión al Sgto. Ramón Muñiz Jiménez #8-13897 y el entonces Agte. José Alvarado Ortiz #22431, diligenciaron una orden de arresto, arrestando en la Calle Acueducto Final de Ponce, al Sr. Sanier A. Suárez Díaz, por violación a los Artículos 6-A y 8 de la anterior Ley de Armas de Puerto Rico y por conspiración para cometer el delito de asesinato, relacionado con la llamada masacre ocurrida en la Calle Venus, en Ponce, el 17 de febrero de 2000.*

*Ustedes le ocuparon en ese arresto, mil ($1,000.00) dólares en efectivo al Sr. Sanier A. Suárez Díaz y actuando de mutuo acuerdo entre usted, José Alvarado Ortiz y el Sargento Muñiz Jiménez #8-38897, se apropiaron para su beneficio de dicho dinero y lo dividieron, de los cuales a usted le correspondieron trescientos ($300.00) dólares, cuatrocientos ($400.00) dólares al Sargento Muñiz Jiménez y trescientos*

($300.00) *dólares al entonces Agte. José F. Alvarado Ortiz,* **según lo declarado por el propio Sr. José Francisco Alvarado Ortiz.**

...". (Énfasis nuestro.)

Véase, págs. 23-25 del Apéndice.

En consecuencia, se expulsó a los recurridos de la Fuerza. Inconformes, instaron recurso de apelación ante la C.I.P.A.

Aquilatada la prueba desfilada, la C.I.P.A. emitió las siguientes determinaciones de hechos las cuales transcribimos *in extenso*:

*"Durante el año 2002, varios agentes de la División de Drogas de Ponce fueron arrestados en un operativo federal que tuvo amplia difusión en los medios noticiosos. Uno de los arrestados lo fue el ex policía José F. Alvarado Ortiz, acusado en la jurisdicción federal por delitos que envolvían corrupción policíaca, en el llamado operativo "Vergüenza Azul".*

*El ex-agente Alvarado Ortiz resultó expulsado de la Policía a consecuencia de los procedimientos criminales que se llevaron en su contra en la esfera federal. No obstante, se le aplicaron sentencias más benignas en dicho foro con el propósito de que proveyera información sobre otros agentes sospechosos de conducta similar.*

*A esos efectos, al testigo Alvarado se le citó a prestar declaración tanto en el foro federal como en la División de Integridad Pública del Área de Ponce. En lo pertinente declaró así en el Área de Ponce.*

*En otra ocasión en el turno nocturno se arrestó a un individuo conocido como "Sanyo" contra quien pesaba una orden de arresto por conspirar para cometer asesinato en la famosa masacre de la calle Venus de Ponce. Además de ser arrestado se le ocuparon $1,000.00 los cuales repartí $300.00 al Sgto. Muñoz, $300.00 al Agte. Pomales y yo me quedé con $400.00."* Este (Sanyo) fue ingresado en la Cárcel Las Cucharas, luego de diligenciar la orden de arresto.

Esta declaración bajo juramento que prestara el ex agente Alvarado a la fecha señalada durante la investigación administrativa de la Policía, consta de siete (7) páginas y en la misma se involucra a otros agentes, además, de los aquí apelantes, **Ex 1A- Apelada**. Esta es la única declaración en la que Alvarado conecta a los co-apelantes con conducta impropia o delictiva. Sin embargo, ni a Muñiz ni a Pomales se les formularon acusaciones por este hecho, ni en lo federal ni en el tribunal estatal, no empece a que el testigo supuestamente resultó favorecido por sentencias mas benignas a cambio de su declaración.

En la parte de la declaración jurada en la que se relaciona a los apelantes, no se consigna específicamente la fecha de la ocurrencia de los hechos. Más bien se limita a utilizar la frase *"...en otra ocasión"*. Sin embargo, en su declaración ante esta Comisión hizo constar el declarante que los incidentes se desarrollaron el 7 de mayo de 2000 a las 12:00 de la media noche.

Surge de los autos también que en el informe rendido por el entonces agente Alvarado no se menciona que los co-apelantes hayan participado en la detención o que se le ocupara al detenido suma de dinero que se alega en la declaración jurada, que fue prestada dos años después de los hechos. Dicho informe no fue firmado por el Sgto. Ramón Muñiz a quien le correspondía realizar las labores de supervisión del turno de 6:00 p.m. a 2:00 a. m. de ese día. En cambio, quien firmó el documento lo fue el Tnte. Fernando García Lugo.

El co-apelante Muñiz prestó declaración jurada el 17 de junio de 2003 en la División de Integridad Pública del Área de Ponce ante el investigador Insp. Héctor Díaz Fernández. En dicha declaración, el co-apelante Muñiz negó toda participación en el arresto de Sanir Suárez Díaz o que hubiese recibido dinero del ex-agente Alvarado Ortiz que le fuera ocupado al detenido. **Ex II- Apelada**. En análogos términos se expresó el co-apelante Miguel Pomales en su declaración de 27 de junio de 2003 ante el mismo funcionario. **Ex III- Apelada**.

El 10 de febrero de 2007 murió asesinado el testigo Sanir Alexander Suárez Díaz. El otro testigo anunciado por la parte apelada lo fue el Tnte. Fernando García Lugo pero no pudo ser localizado, ya que se había acogido a la jubilación por años de servicio. En sustitución de su testimonio oral, la Policía presentó en evidencia y fue admitida una extensa declaración jurada que éste prestara en Integridad Pública. Esta declaración no involucra en manera alguna a los co-apelantes. **Ex VI –Apelada**.

Ninguna declaración escrita fue presentada por la Policía de Puerto Rico, en sustitución del testimonio oral del fallecido Sanier Suárez Díaz.

En su declaración bajo juramento en esta Comisión, el ex-agente Alvarado no pudo precisar si el día en cuestión patrullaba con los co-apelantes en el mismo vehículo oficial. Sin embargo, manifestó que la repartición se verificó en la segunda planta de la Unidad de Saturación y que no medió ninguna solicitud de dinero de parte de los co-apelantes hacia él. Tampoco el testimonio de Alvarado Ortiz acreditó que los co-apelantes tuvieran conocimiento de la incautación del dinero.

*"El co-apelante Muñiz declaró bajo juramento ante esta Comisión reiterando lo que previamente había declarado por escrito en el 2003 en la División de Integridad Pública; que no había aceptado dinero del testigo Alvarado, que desconocía que el detenido se le hubiese ocupado dinero o que se efectuó un arresto la noche de los hechos.*

*… "*. (Énfasis en el original.)

Véase, págs. 42-44 del Apéndice.

En consecuencia, la C.I.P.A. revocó la decisión del Superintendente de la Policía. En esta etapa cabe apuntar que uno de los Comisionados emitió voto disidente. Apuntó que meras inconsistencias en el testimonio de un testigo no obligaban al juzgador a rechazarlo. A su vez, entendió que era erróneo utilizar el texto del pliego de cargos para confrontarlo con el testimonio del ex- agente Alvarado y que su versión de lo ocurrido era creíble.

Inconforme, la Policía de Puerto Rico, representada por el Procurador General, acude ante nos. Procedemos a resolver.

## II

En su escrito, el Procurador General plantea que incidió la C.I.P.A. al revocar la sanción de expulsión impuesta por la Policía de Puerto Rico, fundamentándose en factores irrelevantes y contrarios a Derecho; y al no tomar en consideración la evidencia sustancial obrante en el récord, el cual ataba a los recurridos con la comisión de las Faltas Graves que les fueron imputadas.

## III

La C.I.P.A. fue creada por virtud de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 171 *et seq.*, con el fin de establecer un foro exclusivo para apelar los casos en que se haya imputado mal uso o abuso de autoridad a cualquier empleado de la Rama Ejecutiva autorizado para realizar arrestos. *Arocho v. Policía de P.R.*, 144 D.P.R. 765 (1998).

Mediante la Ley Núm. 23 de 16 de julio de 1992, 1 L.P.R.A. sec. 172, enmendatoria a la Ley Núm. 32, *supra*, se reconoció la jurisdicción apelativa exclusiva de la C.I.P.A. sobre toda sanción impuesta por la autoridad nominadora en respuesta a una imputación de mal uso o abuso de poder y sobre toda medida disciplinaria impuesta en relación con la comisión de faltas leves o graves al Reglamento de la Policía o de otras agencias que tengan reglamentación similar. 1 L.P.R.A sec. 172(2). Véase, *Ramírez v. Policía de Puerto Rico*, 158 D.P.R. 320 (2002).

En cuanto a la función apelativa de la C.I.P.A., la mencionada Ley Núm. 23 establece que esta agencia actuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la ley, cuando el jefe o director del organismo o dependencia de la que se trate les haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por la ley, o faltas graves en el caso de miembros de la Policía o de otras agencias que tengan reglamentación similar. 1 L.P.R.A. sec. 172(1).

La vista celebrada ante la C.I.P.A. es una especie de juicio *de novo*, donde el organismo administrativo tiene la oportunidad de escuchar toda la evidencia y otorgarle el valor probatorio que a su juicio merezca la misma. *Ramírez v. Policía de Puerto Rico, supra; Arocho v. Policía de P.R., supra.*

Las vistas se llevarán a cabo ante esa agencia, constituida por tres o más miembros, o por un comisionado o abogado examinador. Este último tendrá facultad para disponer de todos los asuntos procesales y relativos a la evidencia a presentarse en el caso, incluyendo los incidentes relativos al descubrimiento de prueba y podrá emitir las resoluciones interlocutorias que fueren necesarias. *Ramírez v. Policía de Puerto Rico, supra.*

La C.I.P.A., luego de celebrar la vista correspondiente, puede confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer. Las decisiones de la C.I.P.A. son finales y obligatorias para las partes, sujetas únicamente a revisión por parte de los tribunales. *Id.*

Por otro lado, el Tribunal Supremo ha reiterado que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. *Oficina del Comisionado de Seguros de P.R. v. Carpets & Rugs*, res. en 22 de mayo de 2008, ___ D.P.R.___ (2008), **2008 J.T.S. 114**; *Empresas Ferrer, Inc. v. A.R.P.E.*, res. en 2 de octubre de 2007, ___ D.P.R. ___ (2007), **2007 J.T.S. 181**. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que le son encomendados. *González v. Junta de Directores*, res. en 27 de noviembre de 2006, 169 D.P.R. ___ (2006), 2006, **2007 J.T.S. 185**; *Municipio San Juan v. Plaza Las América*, res. en 18 de octubre de 2006, 169 D.P.R. ___ (2006), **2006 J.T.S. 164**; *López v. Administración*, res. en 30 de agosto de 2006 , 168 D.P.R. ___ (2006), **2006 J.T.S. 146**; *Hernández v. Centro Unido*, res. en 10 de agosto de 2006, 168 D.P.R. ___ (2006), **2006 J.T.S. 140**; *Martínez v. Rosado*, res. en 14 de septiembre de 2005, 165 D.P.R. ___ (2005), **2005 J.T.S. 132**.

La revisión judicial debe limitarse a determinar si actuaron arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción. *Oficina del Comisionado de Seguros de P.R. v. Carpets & Rugs, supra; Asoc. de Vecinos Tulip v. Junta de Planificación*, res. en 22 de mayo de 2006 , 171 D.P. R. ___ (2006), **2007 J.T.S. 146**; *López v. Administración, supra; Camacho v. A.A.F.E.T.*, res. en 22 de mayo de 2006, 168 D.P.R. ___ (2006), **2006 J.T.S. 97**; *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004); *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116 (2000).

Por lo general, éstas gozan de gran deferencia y respeto de parte de nuestros tribunales. *Empresas Ferrer, Inc. v. A.R.P.E., supra.* Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. *Id.*

La intervención judicial en estos casos, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, 3 L.P.R.A. sec. 2175; *Empresas Ferrer, Inc. v. A.R.P.E.*, *supra*; *P.R.T.C. v. J. Reg. Tel. de P. R.*, 151 D.P.R. 269 (2000); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997).

El criterio rector será la razonabilidad de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está obligado a tomar en cuenta la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. *Asoc. de Vecinos Tulip v. Junta de Planificación, supra*. Al evaluar los casos, es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. *Id.* Cuando una agencia interpreta un estatuto que viene llamada a poner en vigor de forma tal que produce resultados contrarios al propósito de esa ley, dicha interpretación no prevalece. *Id.*

La norma reiterada es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors,* res. en 30 de junio de 2005, 165 D.P.R. ___ (2005), **2005 J.T.S. 101**; *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000). La evidencia sustancial para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. *Id.*

La revisión de las determinaciones de hechos está limitada por lo establecido en la Sec. 4.5 de la Ley Núm. 170, *supra*, que dispone lo siguiente:

*"El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.*

*Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."*

Siempre y cuando estén sustentadas por evidencia sustancial que obre en el récord administrativo, las determinaciones de hechos formuladas por la agencia serán sostenidas. *Asoc. de Vecinos Tulip v. Junta de Planificación, supra*. Esto es así, porque las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada por los tribunales mientras la parte que la impugna no produzca suficiente evidencia como para derrotarla. *Id.*

No obstante, las conclusiones de derecho son revisables en todos sus aspectos. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, el Tribunal Supremo ha reiterado consistentemente antes y después de la vigencia de la Ley Núm. 170, *supra*, que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. Si de la totalidad del récord administrativo se sostienen las determinaciones adoptadas por el foro administrativo, los tribunales no deben sustituirlas por su propio criterio. *Id.*

Finalmente, sobre este tema, el foro judicial podrá sustituir el criterio de la agencia por el propio sólo en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante,

es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. *Id.*

En consecuencia, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Camacho v. A.A.F.E.T, supra; Polanco v. Cacique Motors, supra; Misión Ind. P.R. v. J.P. y A.A.A., supra*. Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones de la agencia. *Camacho v. A.A.F.E.T, supra; Misión Ind. P.R. v. J.P. y A.A.A., supra; Metropolitana, S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995).

## IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.

En su escrito, el Procurador General nos plantea que, a la luz de la prueba desfilada, se desprende que los recurridos cometieron las Faltas Graves atribuidas. Es su contención que el caso de autos es un procedimiento administrativo para sancionar a Policías que cometan actos de corrupción. Entiende que la Policía de Puerto Rico tiene esa facultad, independientemente se hubiesen formulado o no cargos criminales contra los recurridos. Es de opinión que la prueba demostró que los recurridos trabajaron en el mismo turno que el ex-agente Alvarado y que, aunque desconocen porqué el recurrido Muñiz no firmó el Informe, este hecho no es óbice para demostrar que recibió dinero ilegalmente. Entiende que resulta "*dudoso*" que los recurridos no supieran que se había arrestado a Sanier Suárez, conforme testificaran en la vista.

Sobre este último extremo, debemos indicarle al Procurador General que sabido es que los señalamientos ante los tribunales apelativos hay que sustentarlos con prueba adecuada. Las meras alegaciones no son suficientes, así como tampoco las conjeturas. *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992).

En su dictamen, la C.I.P.A. señaló que con la evidencia presentada no se pudo demostrar la omisión de las Faltas Graves imputadas a los recurridos. Entendió la agencia que la Resolución de Cargos, así como la prueba presentada, resultaron inconsistentes. Señaló y citamos:

"... *Por un lado, el testigo Alvarado declaró que se encontraron con el Sr. Suárez por casualidad durante un patrullaje preventivo. La resolución de cargos expresa, por otro lado, que tanto los apelantes como el testigo principal de la apelada, estaban diligenciando una orden de arresto contra el ciudadano. También de manera contradictoria, en la resolución de cargos, se alega que la apropiación del dinero fue el resultado de una acción concertada por el testigo y los co-apelantes. En su declaración ante esta Comisión, Alvarado Ortiz expresó que tal acto fue ejecutado por él solo. Tampoco pudo asegurar que la noche del arresto los co-apelantes y él estuvieran realizando el patrullaje en un mismo vehículo oficial.*

*El testigo Alvarado señaló que su declaración fue prestada en un ambiente de mucha presión psicológica, el cual no es el clima apropiado para recordar los detalles más relevantes; con esto pretendió justificar las inconsistencias que en su testimonio surgieron en la re-pregunta.*

*Concluimos finalmente que es inverosímil que la distribución alegada del dinero incautado se llevara a cabo en las mismas facilidades de la Unidad de Saturación donde es menos probable que un delito de esta naturaleza sea cometido sin ser detectado, máxime cuando es la única transacción ilegal imputada a los apelantes.*

*En las circunstancias señaladas, estimamos que la evidencia es insuficiente para justificar la imposición de unas sanciones a los co-apelantes, mucho menos su expulsión de la Policía.*

..."".

Véase, págs. 45-46 del Apéndice.

Somos de opinión que el testimonio del ex-agente Alvarado no mereció credibilidad a la C.I.P.A. Sobre el particular, el Tribunal Supremo ha apuntado que la credibilidad otorgada a los testigos merece nuestra deferencia. *García Reyes v. Cruz Auto Corp.*, res. en 21 de mayo de 2008, 174 D.P.R.___ (2008), **2008 J.T.S. 112**.

A su vez, de los documentos que obran en el expediente no hallamos ninguno que ate a los recurridos a lo imputado. A modo de ejemplo, la Hoja de Ingresado y Egresado de Suárez Díaz revela que el ex-agente Alvarado fue quien ingresó a éste, estando de turno el Agente Román. Tampoco el Informe de Denuncia revela que los recurridos participaron.

En conclusión, hemos examinado detenidamente la situación de autos, a la luz del ordenamiento jurídico, y no hallamos base para intervenir con la decisión de la C.I.P.A. El Procurador General no nos ha demostrado que la agencia actuó de manera ilegal, irrazonable o arbitraria al emitir la decisión de la cual se recurre ante nos. Meramente nos intima que modifiquemos las determinaciones de hechos a las que arribó la C.I.P.A. descansando en una investigación administrativa, y las sustituyamos por las suyas. A la luz de lo anterior, no nos corresponde sustituir el criterio de la agencia por el nuestro. *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543 (1993).

Por último, el Procurador General nos apunta que no existe incongruencia entre la Resolución de Cargos y la prueba desfilada en la vista. Sobre el particular, en ausencia de la exposición narrativa de la prueba en el presente recurso o récord alguno al respecto, los planteamientos del Procurador General no sirven para derrotar la presunción de corrección que recae sobre la determinación en el caso de autos. Estos planteamientos no encuentran apoyo en los documentos que forman parte del expediente ante nos, por lo que hay que tomarlos como meras conjeturas o especulaciones. Reiteramos que los señalamientos ante los tribunales apelativos hay que sustentarlos con prueba adecuada. Las meras alegaciones no son suficientes, así como tampoco las conjeturas. *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992).

**V**

Por los fundamentos arriba esbozados, se confirma la Resolución recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2008 DTA 85**

**1.** La Falta Grave 1 dispone:

*"Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades."*

A su vez, la Falta Grave 24 establece:

*"Apropiarse ilegalmente de bienes pertenecientes a otras personas o aquéllos que le han sido confiados en el curso de sus funciones."*

La Falta Grave 48, por su parte, establece:

*"Vender, prestar, utilizar o en cualquier forma disponer de evidencia obtenida."*

**2.** A modo de ejemplo, utilizamos la Resolución de Cargos del recurrido, Miguel Pomales Bonilla.