AA-95-92                                    1

En el Tribunal Supremo de Puerto Rico

| Miguel Arocho Hernández  Demandante-Apelante  .V  Policía de Puerto Rico  Demadnado-Apelado | Apelación  TSPR-98-6 |
| --- | --- |

Número del Caso: AA-95-92

Abogados Parte Demandante: Lic. Neftalí Fuster González

Abogados Parte Demandada: Hon. Carlos Lugo Fiol
  Procurador General

Lic. María Adaljisa Dávila
 Procuradora General Auxiliar

Abogados Parte Interventora:

Tribunal de Instancia: Comisión de Investigación, Procesamiento y Apelación

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 2/4/1998

Materia: Suspensión de Empleo y Sueldo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miguel Arocho Hernández

    Demandante-apelante

       v.           AA-95-92     APELACION

Policía de Puerto Rico

    Demandado—apelado

OPINION DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 4 de febrero de 1998

Se nos solicita que revoquemos una resolución dictada por la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.). En la misma, dicha Agencia Administrativa confirmó la determinación del Superintendente de la Policía, a los efectos de que el apelante, Miguel Arocho Hernández, había violado el Reglamento de Personal de la Policía de Puerto Rico y, a su vez, "modificó" la determinación a los fines de aumentar la sanción que el Superintendente había impuesto al apelante. Confirmamos.

I

En relación con unos hechos ocurridos el 27 de

abril de 1992, los cuales motivaron una investigación por parte de la Policía de Puerto Rico, el Superintendente, Pedro A. Toledo, concluyó que el Policía Miguel Arocho Hernández había violado el Artículo 14, Sección 14.5, Faltas Graves Números 1 y 40(f)[1], en concordancia con el Artículo 5, Sección 5.2, Deberes y Responsabilidades, Incisos 5 y 6 del Reglamento de Personal de la Policía de Puerto Rico[2]. En la Resolución de Cargos emitida el 26 de enero de 1993, el Superintendente originalmente impuso como castigo a Arocho Hernández una suspensión de empleo y sueldo por el término de cinco (5) meses. Posteriormente, y a solicitud del Policía Arocho, el 2 de septiembre de 1993, el Superintendente redujo el castigo a quince (15) días de suspensión de empleo y sueldo.

Inconforme con lo resuelto, Arocho Hernández presentó apelación ante la C.I.P.A. Habiendo celebrado vistas el 20 de diciembre de 1994 y el 13 de junio de 1995[3], dicho foro administrativo emitió una resolución el 23 de junio de 1995 encontrando probados los hechos que a continuación exponemos:

El 27 de abril de 1992, en horas de la noche, se produjo un escalamiento en un negocio dedicado a la venta de bebidas alcohólicas localizado en la calle Vallejo en Río Piedras, el cual es propiedad del policía Carlos Ríos. Este, en esa misma fecha y en relación con dichos hechos, detuvo a Osvaldo Fernández Morales cerca de la Barriada Venezuela. Luego de ser esposado, Fernández Morales fue trasladado al Cuartel de Río Piedras.

Estando Fernández Morales en el Cuartel de Río Piedras, el apelante, Policía Arocho Hernández, agredió a Fernández Morales en la cabeza y lo obligó a realizar diez (10) "push ups" en la celda,

---

[1] Falta Grave 1: "Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad, o negligencia en el desempeño de sus deberes, funciones y responsabilidades." Falta Grave 40: "Incurrir en el mal uso o abuso de autoridad, entendiéndose como actos de mal uso o abuso de autoridad los siguientes: ... (f) Uso de violencia injustificada, coacción física o psicológica, intimidación o prolongación indebida, sobre o de una persona arrestada, o detenida para fines de investigación."
[2] Inciso 5: "Observar en todo momento una conducta ejemplar." Inciso 6: "Tomar las providencias necesarias para garantizar la protección de la persona detenida."
[3] El apelante —policía Arocho Hernández— a pesar de haber sido debidamente citado en ambas ocasiones, no compareció a ninguna de las vistas; sí lo hizo su abogado.

mientras le daba patadas.  Habiendo el detenido terminado, el apelante lo obligó a hacer diez (10) "push-ups" adicionales, pegándole fuerte con la mano abierta en la espalda.[4]

La noche de los hechos el detenido fue llevado a la Cárcel de Bayamón, donde no lo quisieron aceptar por estar herido.  La policía lo condujo, entonces, al Hospital de Bayamón donde el médico, luego de examinarlo, ordenó realizarle unas placas. No se le hicieron.  Luego, el policía José Toro y el apelante lo llevaron a la Cárcel de Bayamón, donde finalmente fue ingresado.

La Sra. Carmen Lydia Morales Dumas, madre de Fernández Morales, testificó ante la Comisión que el día de los hechos se enteró por medio de la vecina que su hijo estaba detenido en el Cuartel de Río Piedras. De acuerdo a su testimonio, cuando llegó al cuartel habló con el apelante Arocho Hernández, indicándole éste que su hijo estaba preso por haber escalado un negocio. La Sra. Morales Dumas expresó, además, ante la Comisión, haber visto a su hijo en una celda, que estaba triste, que llevaba puesto un "sweater" gris y que no tenía golpe alguno.  Añadió que se marchó, comenzó a realizar las gestiones para fiar a su hijo y que a los tres (3) días, cuando logró hacerlo, se percató de que éste tenía un hematoma en el ojo izquierdo y que, al ella preguntarle lo que había pasado, éste le contestó que los policías Miguel Arocho, Carlos Ríos y José Toro lo habían agredido.

La C.I.P.A., basándose en las anteriores determinaciones de hechos, confirmó la violación de las faltas imputadas, pero "modificó" la sanción impuesta por el Superintendente, aumentándola a noventa (90) días de suspensión de empleo y sueldo.  El apelante oportunamente solicitó reconsideración del dictamen.  La misma fue declarada no ha lugar mediante resolución del 21 de julio de 1995 y notificada el 28 de julio de 1995.

Inconforme con la decisión, Arocho Hernández acudió ante nos, alegando como único error que:

> "El aumento de la sanción impuesta al apelante es una acción inconstitucional, por resultar en un doble castigo por los mismos hechos."

---

[4] Fernández Morales manifestó ante la Comisión que el policía Carlos Ríos, luego de esposarlo le dio un puño en el estómago; que una vez en el cuartel de Río Piedras, el policía Toro le daba por el lado izquierdo de la cara y el policía Ríos le daba también en la cara estando él esposado; que el policía Ríos le pidió la cantidad de $3,000.00 para retirar la denuncia contra él; que una vez en la celda, el apelante lo obligó a realizar diez (10) "push-ups" en dos ocasiones y que mientras él los hacía, el apelante lo pateaba y lo agredía.

Arocho Hernández basa su posición en la prohibición contenida en la Enmienda Quinta de la Constitución de Estados Unidos y en el Artículo II, Sección 11 de la Constitución de Puerto Rico a los efectos de que nadie será puesto en riesgo de ser castigado dos veces por el mismo delito.

## II

La C.I.P.A se creó mediante la Ley Núm. 32 del 22 de mayo de 1972, 1 L.P.R.A. secs. 171 y siguientes, para intervenir en casos en que se impute mal uso, o abuso, de autoridad a cualquier funcionario del orden público, agente de rentas internas o cualquier otro de la Rama Ejecutiva autorizado para realizar arrestos. La referida Ley considera "mal uso o abuso de autoridad", en lo pertinente, el uso de violencia injustificada, la coacción física o psicológica y la intimidación o prolongación indebida sobre una persona arrestada o detenida para fines de investigación. 1 L.P.R.A. 172 (1) (f).

Por otro lado, la aludida Ley establece, en cuanto a las funciones de la C.I.P.A., lo siguiente:

> "(2) Actuará [la C.I.P.A.] como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por este Capítulo, cuando el jefe o director del organismo o dependencia de que se trate les haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por este Capítulo, o con faltas leves en que se haya impuesto una reprimenda o suspensión de empleo y sueldo o faltas graves en el caso de miembros de la Policía o de otras agencias que tengan reglamentación similar. También podrá entender en apelaciones interpuestas por cualquier ciudadano perjudicado por la actuación del funcionario, cuando dicho ciudadano no esté conforme con la determinación de tal funcionario.
> ....
> La Comisión, luego de celebrar la vista correspondiente, según lo dispuesto en el inciso (3) de la sec. 173 de este título, podrá confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer. 1 L.P.R.A. sec. 172 (2)." (Énfasis nuestro.)

En el caso que nos ocupa, la C.I.P.A. estaba autorizada a intervenir, en calidad de cuerpo apelativo, dado que las faltas que se imputan al apelante coinciden con lo que la ley habilitadora de la C.I.P.A. considera como constitutivo de "mal uso o abuso de autoridad" por parte de un agente del orden público.

Asimismo, la C.I.P.A. estaba facultada para aumentar la sanción que impusiera el Superintendente al apelante. A pesar de que éste acudió ante dicho organismo administrativo con el propósito de que se revocara o redujera la sanción impuesta por el Superintendente, la autoridad de dicha Comisión no se entiende limitada a estas dos posibilidades, sino que incluye la de "modificar la determinación o actuación de la cual se hubiere apelado" y la de "imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer." (Énfasis nuestro.)

Es preciso señalar que modificar <u>no</u> significa únicamente reducir o disminuir. Modificar, en términos generales, es enmendar, cambiar, corregir, reformar, variar o rectificar.[5] Por otro lado, una de las reglas de hermenéutica de nuestro ordenamiento, establece que "las palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces". Artículo 131 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 15. Atendiendo al uso general que este Tribunal ha otorgado a la palabra "modificar", en <u>Olazábal</u> v. <u>U.S. Fidelity,</u> 103 D.P.R. 448 (1975), la misma se utilizó para hacer referencia a un aumento de sentencia; esto es, la cantidad concedida en instancia como indemnización por concepto de mora fue aumentada.[6]

De otra parte, la facultad de la C.I.P.A. para aumentar la sanción impuesta al apelante es incuestionable. Dicha agencia tiene, de acuerdo a la ley, facultad para imponer <u>cualquier sanción</u> que la autoridad facultada para sancionar hubiese podido imponer. En el presente caso, la autoridad facultada para sancionar era el Superintendente. La C.I.P.A., en consecuencia, tenía facultad para imponer cualquier sanción que el Superintendente hubiese podido imponer. El Superintendente, por su parte, estaba facultado en el presente caso para imponer como castigo la expulsión del cuerpo o la degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses.[7] Así las cosas, la C.I.P.A., al imponer como sanción una suspensión de empleo y sueldo por noventa (90) días, actuó conforme a sus facultades ya que su decisión estuvo dentro de los parámetros que la Ley fija al Superintendente.

Por último, con relación a la autoridad de la C.I.P.A. para aumentar la sanción impuesta al apelante por el Superintendente, es preciso señalar que dicha agencia --dentro de su facultad apelativa-- tiene la obligación de celebrar una vista[8]. En esa vista, la Comisión tiene la oportunidad de escuchar nuevamente toda la prueba presentada ante el Superintendente y otorgarle el valor probatorio que a su juicio merezca la misma. Esta vista es una especie de juicio *de novo*, por lo que la C.I.P.A. puede arribar a determinaciones de hecho o conclusiones de derecho diferentes a las emitidas por el Superintendente. En efecto, en este caso, luego de haber celebrado la vista y considerado la totalidad de la evidencia, la C.I.P.A. llegó a una decisión distinta a la emitida por el Superintendente: aumentó la sanción impuesta al apelante.

## III

---

[5] A. López García – Molins , *Diccionario de Sinónimos y Antónimos de la Lengua Española*, Valencia, España, Editorial Ortells, 1985, 1114 págs.

[6] También la palabra modificar la hemos utilizado para referirnos a, o en efecto llevar a cabo, un aumento en la adjudicación de daños hecha por un tribunal inferior. <u>Maldonado</u> v. <u>Interamerican University</u>, 104 D.P.R. 420 (1975), <u>Moa</u> v. <u>E.L.A.</u>, <u>Gallart</u> v. <u>P.R. Telephone Co.</u>, 100 D.P.R. 128 (1971), <u>Viuda de Silva</u> v. <u>Auxilio Mutuo</u>, 100 D.P.R. 30 (1971) y <u>Levy</u> v. <u>Caribe Hilton Hotel</u>, 98 D.P.R. 721 (1970).

[7] A estos efectos, refiérase al Reglamento de Personal de la Policía de Puerto Rico, Sección 14.3 (2) (a) titulada "Acciones Disciplinarias a Miembros de la Policía", donde se establecen los posibles castigos a imponerse por la comisión de una falta grave.

El planteamiento de la parte apelante en cuanto a que el aumento de la sanción por parte de la C.I.P.A. es una acción inconstitucional, por resultar en un doble castigo por los mismos hechos, es a todas luces inmeritorio.

Si bien es cierto que una de las protecciones que provee la cláusula constitucional que prohíbe la doble exposición[9] es contra castigos múltiples por la misma ofensa[10], esta protección se activa en casos en que una misma conducta infringe más de una disposición penal y su propósito es evitar que a un acusado se le imponga una pena excesiva.[11]

Esa, definitivamente, no es la situación en el caso ante nos. Aquí no ha habido imposición de penas múltiples por violación a más de una disposición <u>penal</u>, sino un proceso disciplinario <u>administrativo</u> contra un policía. Dicho proceso disciplinario consta de seis (6) etapas cuales son: la investigativa, la formulación de cargos, la celebración de vista, la decisión del Superintendente, la etapa apelativa ante la C.I.P.A. y la revisión judicial. <u>Asociación de Miembros de la Policía</u> v. <u>Betancourt Lebrón,</u> Opinión y Sentencia de 3 de junio de 1994. El aquí apelante se encontraba en la quinta etapa del procedimiento disciplinario --la etapa apelativa-- en la cual la C.I.P.A. tomó una acción, aumentar la sanción que le impusiera el Superintendente, que según ya discutimos se encontraba dentro de sus facultades. No se cometió el error señalado.

En vista de todo lo anterior, concluimos que la C.I.P.A. estaba autorizada para aumentar la sanción impuesta por el Superintendente al apelante Arocho Hernández. Dicha actuación no constituye un doble castigo por los mismos hechos y, por ende, no se encuentra dentro del alcance de la protección de la cláusula sobre doble exposición. Por todos los fundamentos expuestos, se dictará Sentencia confirmatoria de la resolución apelada.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

[8]   1 L.P.R.A. sec. 172(2).

[9]   "...ni podrá nadie ser sometido por el mismo delito dos veces a un juicio que pueda ocasionarle la pérdida de la vida o la integridad corporal...." Constitución de Estados Unidos, Enmienda V; "...Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito...." Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 11 (Carta de Derechos).

[10]  Las tres protecciones adicionales son: ulterior exposición tras absolución por la misma ofensa; ulterior exposición tras convicción por la misma ofensa y ulterior exposición tras exposición anterior por la misma ofensa. Ernesto L. Chiesa, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos,</u> Colombia, Forum, 1992, Vol. II, pág. 354.

[11]  Olga Elena Resumil de Sanfilippo, <u>Práctica Jurídica de Puerto Rico, Derecho Procesal Penal</u>, Orford New Hampshire,Butterworth Legal Publishers, 1993, t. 2, pág. 327 citando en parte a <u>González Zayas</u> v. <u>Tribunal Superior</u>, 100 D.P.R. 136, 140 (1971).

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Miguel Arocho Hernández**

    **Demandante-apelante**

       **v.**            **AA-95-92**    **APELACION**

**Policía de Puerto Rico**

    **Demandado-apelado**

**SENTENCIA**

**San Juan, Puerto Rico, a 4 de febrero de 1998**

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la resolución emitida el 23 de junio de 1995 por la Comisión de Investigación, Procesamiento y Apelación.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

                     Isabel Llompart Zeno
               Secretaria del Tribunal Supremo