El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
El presente recurso nos permite pronunciarnos sobre una controversia que ha generado múltiples interpretacio-nes conflictivas del Tribunal de Apelaciones. En esencia, debemos resolver cuál es el foro apelativo con jurisdicción exclusiva para evaluar y revisar las medidas disciplinarias impuestas a los oficiales de custodia de la Administración de Corrección: la Comisión Apelativa del Sistema de Admi-nistración de Recursos Humanos (CASARH) o la Comisión de Investigación, Procesamiento y Apelación (CIPA).
Luego de analizar de manera integrada la delimitación estatutaria y reglamentaria entre ambos foros administra-tivos, opinamos que la CIPA es la agencia con jurisdicción apelativa exclusiva para atender las querellas disciplina-rias presentadas contra los oficiales de custodia, mientras que la jurisdicción de la CASARH en cuanto a tales funcio-narios está limitada a aquellos asuntos de transacciones de personal como lo relacionado al principio del mérito en el servicio público. En vista de que el caso de epígrafe trata sobre varias imputaciones disciplinarias contra tres oficia-les de custodia, concluimos que la CIPA es el foro con juris-dicción apelativa exclusiva. Por ende, confirmamos la sen-tencia emitida por el Tribunal de Apelaciones.
I
El Secretario de la Administración de Corrección, el Ledo. Miguel A. Pereira, tomó varias medidas disciplina-rias contra tres oficiales de custodia (los peticionarios) por *603 haber incurrido en alegadas violaciones al Reglamento de Oficiales de Custodia de la Administración de Corrección, Reglamento Núm. 6326 de 7 de mayo de 2001, y al Regla-mento de Personal de la Administración de Corrección de 28 de septiembre de 1979, según enmendado. A continua-ción, especificamos los cargos y las sanciones impuestas a los peticionarios y exponemos el trámite procesal transcu-rrido en cada caso.
Mediante comunicación escrita de diciembre de 2001, el Secretario indicó al Sr. Kelvin Negrón Martínez su inten-ción de destituirlo del puesto de Oficial de Custodia. En dicha misiva, el licenciado Pereira alegó que el señor Ne-grón Martínez abandonó su puesto al quedarse dormido, permitiendo la fuga de ocho confinados. Según el Secreta-rio, ello constituyó una violación a varias disposiciones del Reglamento de Oficiales de Custodia, supra, relacionadas a los deberes y responsabilidades de tales funcionarios.(1)
Tras celebrar la vista administrativa correspondiente, la Oficial Examinadora de la Administración de Corrección recomendó la destitución del señor Negrón Martínez. El Secretario acogió dicha recomendación y le notificó por es-crito al señor Negrón Martínez que había sido destituido de su puesto. A su vez, en la referida notificación se le apercibió sobre su derecho a solicitar la revisión de la de- *604 cisión tomada por la Administración de Corrección ante la extinta Junta de Apelación del Sistema de Administración de Personal (JASAP, ahora CASARH).
En conformidad con tales directrices, el señor Negrón Martínez apeló oportunamente ante la JASAP. No obstante, dicho foro apelativo desestimó el recurso por entender que carecía de jurisdicción sobre la materia. Concluyó que la CIPA era la agencia con jurisdicción apelativa exclusiva cuando un oficial de custodia de la Administración de Co-rrección impugna una medida disciplinaria tomada en su contra.
Por otro lado, en junio de 2003 el licenciado Pereira envió una comunicación a la Sra. Wanda Pacheco Muñiz, Oficial de Custodia, en la que le indicó su intención de suspenderla de su empleo y sueldo por incurrir en alegadas amenazas e insubordinación contra otros funcionarios. Además, se alegó que la señora Pacheco Muñiz hizo caso omiso a varias órde-nes impartidas por un supervisor. En atención a lo anterior, se le imputaron varias violaciones disciplinarias al Regla-mento de Oficiales de Custodia, al Reglamento de Personal de la Administración de Corrección y al Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección.(2)
Luego de varios incidentes procesales, la Administra-ción de Corrección envió una comunicación escrita a la se-ñora Pacheco Muñiz notificándole su suspensión de empleo y sueldo por sesenta días. En la referida misiva, se le aper-cibió que podía apelar dicha decisión ante la CASARH. Tras apelar a dicho organismo, éste se declaró nuevamente *605 sin jurisdicción por entender que el foro apelativo con ju-risdicción exclusiva en tales casos era la CIPA.
Por último, en mayo de 2004 el licenciado Pereira le informó al Sr. Erick González Rodríguez su intención de destituirlo del puesto de Oficial de Custodia. La razón ale-gada para ello fue que éste se negó a cumplir una orden del Sgto. Gerardo L. García, en violación a varias disposiciones del Reglamento de Oficiales de Custodia, supra, sobre el deber de acatar las órdenes e instrucciones de sus supervisores.(3) Además, por la misma conducta también se le imputó incurrir en violación al Reglamento de Personal de la Administración de Corrección y al Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección.
Tras celebrar la vista administrativa correspondiente ante un Oficial Examinador de la Administración de Co-rrección, el Secretario remitió una carta al señor González Rodríguez en donde le comunicó que había sido separado del puesto que ocupaba. Al igual que ocurrió en los dos casos anteriores, luego de que el señor González Rodríguez apeló ante la CASARH, dicho foro determinó que no osten-taba jurisdicción para atender su reclamo, pues entendió que la CIPA era el foro apelativo con jurisdicción exclusiva.
Inconformes con la determinación de la agencia admi-nistrativa de declararse sin jurisdicción, los tres peticiona-rios acudieron ante el Tribunal de Apelaciones. Dicho foro confirmó la determinación de la CASARH por entender que la ley habilitadora de la CIPA le concede jurisdicción *606 apelativa exclusiva para adjudicar las apelaciones relacio-nadas con las violaciones al Reglamento de la Policía Es-tatal y de otras agencias con reglamentación similar, como lo es el Reglamento de Oficiales de Custodia de la Admi-nistración de Corrección. Concluyó, además, que la CA-SARH mantendría jurisdicción apelativa primaria para resolver los reclamos de los empleados de la Administración de Corrección relacionados con transacciones de personal, al amparo de la Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 L.P.R.A. see. 1461 et seq. Por último, resolvió que los peticiones disponen de treinta días, a partir de la notificación del dictamen, para presen-tar sus respectivas apelaciones ante la CIPA, de así esti-marlo prudente.
Aún insatisfechos, los peticionarios acuden ante nos y solicitan que revoquemos el dictamen recurrido. Arguyen que otros paneles del Tribunal de Apelaciones resolvieron en varios casos similares que la CASARH es el foro apela-tivo con jurisdicción exclusiva y que, en consecuencia, dicha interpretación debe prevalecer de acuerdo con los he-chos y el derecho aplicable en el presente caso.
Examinado el recurso, acordamos expedir. Con el bene-ficio de la comparecencia de las partes, procedemos a resolver.
II
 La jurisdicción de las agencias administrativas se deriva y delimita por su ley habilitadora. Al aprobar la ley orgánica de una agencia, la Asamblea Legislativa le auto-riza y delega los poderes necesarios para que ésta actúe conforme al propósito perseguido con su creación. D.A.Co. v. Fcia. San Martín, 175 D.P.R. 198 (2009); Amieiro González v. Pinnacle Real Estate, 173 D.P.R. 363 (2008). Por lo tanto, para determinar si una entidad pública está autorizada para considerar un asunto, es necesario acudir a su *607 ley habilitadora. Al delimitar el ámbito jurisdiccional que dimana de su estatuto, se identifica el marco de autoridad delegado por la Asamblea Legislativa. Cualquier acción ad-ministrativa que exceda de tales parámetros adolecerá de nulidad y será esencialmente ilegal. D.A.Co. v. Fcia. San Martín, supra; Plaza Las Américas v. N & H, 166 D.P.R. 631, 654 (2005); Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203 (2002).
En ese contexto, mediante la Ley Núm. 32 de 22 de mayo de 1972 (1 L.P.R.A. sec. 171 et seq.), la Asamblea Legislativa creó la CIPA con el fin de establecer un organismo alterno e independiente para intervenir con los casos en que se impute mal uso o abuso de autoridad a cualquier agente del orden público, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos.(4) Arocho v. Policía de P.R., 144 D.P.R. 765 (1998). En aras de cumplir con estos objetivos, la referida ley orgánica le delegó a la CIPA varias funciones investigativas y adjudicativas —tanto en primera instancia como en apelación— encaminadas a imponer y revisar las medidas disciplinarias incoadas contra un funcionario público bajo su ámbito jurisdiccional. Ley Núm. 32, supra. Véanse, además: Arroyo v. Policía de P.R., 143 D.P.R. 265, 275 (1997); Ortiz Ruiz v. Superintendente Policía, 132 D.P.R. 432, 439 (1993).
Posteriormente, al aprobar la Ley de Personal de Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, la Asamblea Legislativa estableció la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). 3 L.P.R.A. see. 1301 et seq. (derogada). Dicho foro, que luego fue sustituido por la CASARH,(5) gozaba de jurisdicción *608 primaria para entender en las apelaciones de las decisio-nes de gerencia de personal emitidas por los administrado-res individuales y de las autoridades nominadoras.(6) 3 L.P.R.A. sec. 1394(1) (derogada).
La aprobación de la Ley Núm. 5 produjo una gran confusión respecto a la jurisdicción apelativa de la CIPA, ya que el referido estatuto concedió a la antes JASAP —hoy CASARH— la autoridad para entender y adjudicar, entre otros asuntos, las decisiones de gerencia de personal de los administradores individuales, incluyendo a los funcionarios de la Rama Ejecutiva autorizados a realizar arrestos. Véase Arroyo v. Policía de P.R., supra, pág. 276. Así las cosas, y para evitar el conflicto jurisdiccional generado entre las funciones adjudicativas delegadas tanto a la CIPA como a la JASAP, la Asamblea Legislativa aprobó la Ley Núm. 23 de 16 de julio de 1992, mediante la cual enmendó la ley habilitadora de la CIPA. En lo pertinente al caso de autos, dicha enmienda dispone que la CIPA
[a]ctuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funciona-rios públicos cubiertos por este capítulo, cuando el jefe o director, del organismo o dependencia de que se trata le haya im-puesto cualquier medida disciplinaria en relación con actuaciones cubiertas por este capítulo, o con faltas leves en que se haya interpuesto una reprimenda o suspensión de em-pleo y sueldo o faltas graves en el caso de miembros de la po-licía estatal o municipal o de otras agencias que tengan regla-mentación similar (Enfasis suplido.) 1 L.P.R.A. see. 172(2).
Es decir, el referido estatuto confirió jurisdicción apela-tiva exclusiva a la CIPA en los casos en que se haya im-puesto una sanción disciplinaria a un miembro de la Poli- *609 cía —o a un funcionario de cualquier agencia con regla-mentación similar— como consecuencia de la comisión de faltas leves o graves establecidas en tales reglamentos.
Asimismo, el Art. 3 de la referida enmienda a la ley orgánica reafirmó que la CIPA ostenta jurisdicción ex-clusiva para actuar como foro apelativo en todo caso en el cual la autoridad nominadora haya impuesto cualquier medida o sanción disciplinaria a un funcionario o empleado de la Rama Ejecutiva autorizado para efectuar arrestos, en relación con actuaciones donde se le imputa mal uso o abuso de autoridad según se define en el Art. 2 de la ley. 1 L.P.R.A. sec. 173. Del mismo modo, la referida disposición aclaró que la CIPA goza de jurisdicción apelativa exclusiva en aquellos casos donde el Superintendente de la Policía haya impuesto cualquier medida o sanción disciplinaria a un miembro de la Policía con relación a la comisión de faltas leves o graves, según se enumeran en la ley y el reglamento de dicha entidad pública.
En relación con todos los demás casos, como aquellos relacionados con cesantías, traslados, probatorias y con áreas esenciales del principio de mérito, el estatuto dispone que se ventilarían ante la CASARH. Art. 3 de la Ley Núm. 23, supra. De hecho, al amparo de tales fundamentos, este Tribunal resolvió en Arroyo v. Policía de P.R., supra, que la CIPA es el organismo designado por el legislador para atender, con jurisdicción apelativa exclusiva, cualquier medida disciplinaria impuesta por el Superintendente de la Policía a un miembro de ese Cuerpo en relación con la comisión de faltas leves o graves al Reglamento de la Policía de Puerto Rico.
A pesar de lo anterior, la referida disposición no menciona específicamente que la CIPA ostenta jurisdicción apelativa exclusiva cuando se le imputa la comisión de una falta leve o grave a un funcionario de la Administración de Corrección, según se establecen por la ley habilitadora de *610 dicha agencia y sus reglamentos correspondientes. Sin embargo, como indicamos anteriormente, al aclarar el ámbito de la jurisdicción exclusiva de la CIPA, la referida en-mienda hace alusión a las apelaciones interpuestas por los funcionarios públicos en casos de faltas leves o graves de la policía o de otras agencias que tengan reglamentación similar. 1 L.P.R.A. sec. 172(2).
Por lo tanto, el caso de autos requiere que determine-mos si la Administración de Corrección es una agencia con reglamentación similar a la establecida por la Policía de Puerto Rico. De contestar dicha interrogante en la afirma-tiva, nos corresponde resolver si las faltas imputadas son de carácter disciplinario bajo la autoridad revisora de la CIPA, o si se trata de meras transacciones de personal re-guladas por la Ley de Recursos Humanos en el Servicio Público.
En atención al marco normativo antes reseñado, proce-demos a resolver ambas interrogantes.
III
En el presente caso, los peticionarios alegan que nin-guna de las medidas disciplinarias impugnadas responde a imputaciones de mal uso o abuso de autoridad, según éstas se definen taxativamente en la orgánica de la CIPA. Ade-más, aducen que las sanciones impuestas en su contra tra-tan sobre, las normas de comportamiento y asistencia, las cuales constituyen transacciones de personal bajo la juris-dicción de la CASARH. No estamos de acuerdo. Veamos.
En primer lugar, de un análisis comparativo del Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 de 11 de mayo de 1990, según enmendado, del Reglamento de Oficiales de Custodia, supra, y del Reglamento de Personal, supra, de dicha agencia, se deduce que la Administración de Corrección es una agencia *611 con. reglamentación similar a la establecida por la Policía de Puerto Rico. A modo ilustrativo, el Art. 14, Secs. 14.3 a 14.5 del Reglamento de Personal de la Policía de Puerto Rico, supra, págs. 94-110, desglosa las acciones disciplina-rias que se tomarán contra todo miembro de la Policía y enumera las faltas que se consideran leves y graves. En particular, la Sec. 14.5 del referido reglamento clasifica las siguientes conductas como faltas graves: (1) negligencia en el desempeño de sus deberes; (2) amenazar con, o hacer uso de un arma de fuego contra cualquier persona; (14) desaca-tar órdenes de un superior; (33)(a) abandonar el servicio al quedarse dormido. íd., págs. 90, 100 y 104.
Nótese que dichas faltas son esencialmente análogas a las que se le imputaron a los peticionarios en el caso ante nuestra consideración. De hecho, todas las infracciones en controversia que reseñamos anteriormente se fundamentaron al amparo de varias disposiciones del Reglamento de Oficiales de Custodia y el Reglamento de Personal de la Administración de Corrección que prohíben la misma conducta. Aunque los referidos reglamentos no estructuran las faltas leves y graves de manera idéntica al Reglamento de Personal de la Policía de Puerto Rico, las conductas proscritas en éstos son muy similares y persiguen los mismos fines disciplinarios: regular y revisar la conducta de funcionarios autorizados a realizar arrestos y encargados de velar por el orden público. Ciertamente, los Oficiales de Custodia en las instituciones correccionales del Estado ostentan unas funciones intrínsecamente parecidas a las de la Policía de Puerto Rico, pues los funcionarios de ambas agencias tienen el deber primordial de velar por la seguridad pública del país.
Por ende, concluimos que la reglamentación de la Administración de Corrección es similar al Reglamento de la Policía de Puerto Rico para propósitos de la jurisdicción apelativa exclusiva de la CIPA, según se establece en la ley orgánica de dicho foro administrativo. 1 L.P.R.A. sec. *612 172(2). Más aún, dicha similitud entre los fines reglamen-tarios de ambas agencias trasciende la comparación anterior, pues este Tribunal ha reconocido que los oficiales de custodia constituyen un cuerpo policial adicional con el propósito de proveer seguridad en un sector que requiere vigilancia particularizada. Pueblo v. Andino Tosas, 141 D.P.R. 652, 657 (1996). Es por ello que el fin legislativo de establecer la CIPA como un organismo alterno e indepen-diente para intervenir de forma especializada con los casos en que se impute mal uso o abuso de autoridad a cualquier agente del orden público o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos, aplica con igual rigor a la Administración de Corrección como a la Policía de Puerto Rico.
Ahora bien, cabe destacar que la jurisdicción apelativa en aquellos casos relacionados con el principio de mérito recae en la CASARH y no en la CIPA. Dicha conclusión es inevitable, pues el Art. 2 de la ley habilitadora de la CIPA dispone que “[t]odos los demás casos, incluyendo las separaciones en período probatorio, cesantías, traslados y aquellos relacionados con áreas esenciales al principio de mérito se ventilarán ante la Junta del Sistema de Administración de Personal, quien tendrá la jurisdicción primaria”. 1 L.P.R.A. sec. 173. De hecho, la Ley para la Administración de los Recursos Humanos en el Servicio Público —la cual, como expresamos, creó a la CASARH como organismo adjudicativo sustituto de JASAP— le confirió jurisdicción apelativa a esta entidad pública sobre las decisiones de los Administradores Individuales
[c]uando un empleado dentro del Sistema de Administración de los Recursos Humanos, no cubiertos por la Ley de Relacio-nes del Trabajo para Servicio Público, secs. 1451 et seq. de este título, alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda en virtud de las disposi-ciones de este capítulo, de la Ley de Municipios Autónomos, los reglamentos que se aprueben para instrumentar dichas *613 leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a este capítulo. (Enfasis suplido.) 3 L.P.R.A. sec. 1468i(l).
Dicha disposición es aplicable a la Administración de Corrección, pues como indicamos anteriormente, la men-cionada entidad pública es un Administrador Individual en conformidad con la referida ley.
En el caso de autos, los peticionarios ocupaban puestos de Oficiales de Custodia en la Administración de Corrección. Éstos fueron destituidos o suspendidos de em-pleo y sueldo por la Administración luego de alegadamente incumplir órdenes de un supervisor, abandonar su puesto al quedarse dormido, e incurrir en amenazas e insubordinación. Estas alegadas violaciones imputadas a los peticionarios no tratan sobre transacciones de personal o el principio del mérito, sino sobre conducta que incide directamente en el orden y en la seguridad de las institu-ciones penales. Dicha conducta está claramente regulada por los reglamentos de la Administración de Corrección, los cuales fueron invocados en el presente caso. Además, no hay duda de que el Reglamento de Oficiales de Custodia y el Reglamento de Personal de la Administración de Correc-ción son similares al Reglamento de Personal de la Policía de Puerto Rico.
En conformidad con el ordenamiento estatutario y reglamentario antes examinado, resulta forzoso concluir que la CIPA es el foro apelativo con jurisdicción exclusiva para atender los recursos incoados por los peticionarios, incluso si éstos pudieran incidir subsidiariamente sobre el principio del mérito u otros asuntos de personal.(7) Dicha conclusión meramente reproduce la clara intención de la Asamblea Legislativa al crear la CIPA como organismo es- *614 pecializado para revisar las alegadas faltas disciplinarias de todos aquellos funcionarios llamados a preservar el or-den y la seguridad en las instituciones penales y en las comunidades del país.
IV
Por todo lo antes expuesto, resolvemos que el organismo administrativo con jurisdicción exclusiva para resolver las apelaciones presentadas por los peticionarios es la CIPA y no la CASARH, por lo que el Tribunal de Apelaciones no erró al confirmar las resoluciones de CASAJRH declarán-dose sin jurisdicción. En vista de ello, confirmamos el dic-tamen recurrido.

Se dictará sentencia de conformidad.

 En particular, al señor Negrón Martínez se le imputó infringir el Art. VKB)(1) y (7) del Reglamento de Oficiales de Custodia de la Administración de Corrección, Reglamento Núm. 6326 de 7 de mayo de 2001, págs. 6-7, el cual exige que los Oficiales de Custodia guarden la custodia general de todos los confinados bajo la jurisdicción de la Administración de Corrección y que cumplan con aquellas funciones u órdenes par-ticulares del “puesto” al que sea asignado durante su turno de trabajo. A su vez, se le imputó violar el Art. VI(D)(l)(b)(l) y (22), supra, págs. 9 y 12, que enumera como una tarea específica permanecer dentro de la unidad de vivienda que le sea asignada para prestar servicios y asegurarse que el confinado se mantenga en el lugar de vivienda asignado. Además, se alegó que el señor Negrón Martínez infringió varias normas de conducta enumeradas en el Ait. XII (AX1-3, 5), supra, págs. 60-61, relacionadas con la obligación de los oficiales de cumplir específicamente sus deberes y prestar un servicio eficiente a la Administración y de acatar aquellas órdenes e instrucciones de sus su-pervisores compatibles con la autoridad delegada en éstos y con las funciones y obje-tivos de la agencia. Por último, se le imputó violar el Art. XII(C)(3), supra, pág. 64, que dispone que los Oficiales de Custodia no abandonarán sus puestos de custodia (plan-tones) por ningún motivo, hasta que sean debidamente relevados u obtengan el per-miso de su supervisor. Véase Apéndice, pág. 132.

 En particular, a la señora Pacheco Muñiz se le imputó violar el Art. XII (B)(1)(a) y (b) del Reglamento de Oficiales de Custodia, Reglamento Núm. 6326 de 7 de mayo de 2001, págs. 63-64. Estas disposiciones exigen que los Oficiales de Cus-todia observen un comportamiento correcto, cortés y respetuoso en las relaciones con sus superiores, compañeros de trabajo y confinados, así como con el público en general. Además, se le imputó violar el Art. XII(A)(5) de dicho reglamento, supra, pág. 61, el cual dispone que los Oficiales de Custodia deberán acatar aquellas órde-nes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones y objetivos de la agencia. Véase Apéndice, pág. 137.

 Específicamente, al señor González Rodríguez se le imputó infringir el Art. XII(A)(1), (2), (5) y (8) del Reglamento de Oficiales de Custodia, Reglamento Núm. 6326 de 7 de mayo de 2001, págs. 60-61. En esencia, estas disposiciones establecen que los miembros del Cuerpo de Oficiales de Custodia deberán cumplir específica-mente sus deberes y prestar un servicio eficiente a la Administración; y que serán responsables de sus acciones u omisiones ante sus supervisores inmediatos, compañe-ros, confinados y ante cualquier otra persona con la que se relacione. Además, dispo-nen que los oficiales de custodia deberán acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones y objetivos de la agencia, y que bajo ningún concepto organizarán, provocarán o incita-rán a ningún tipo de actividad que propicie la inestabilidad laboral o que conduzca a paros o movimientos huelgarios en horas de trabajo. Véase Apéndice, pág. 127.

 Evidentemente, dicha clasificación incluye a los oficiales de custodia, pues tales funcionarios están capacitados para portar armas y realizar arrestos. 4 L.P.R.A. sec. 1126.

 La Ley de Personal de Servicio Público de 1975 fue derogada mediante la Ley para la Administración de los Recursos Humanos en el Servicio Público, Ley Núm. *608 184 de 3 de agosto de 2004 (3 L.P.R.A. 1461 et seq.). Como consecuencia, el referido estatuto creó la CASARH como organismo adjudicativo sustituto de la JASAP y le concedió jurisdicción apelativa en todas las reclamaciones de los empleados públicos no organizados sindicalmente que estuviesen relacionadas con el principio de mérito.

 Nótese que la Administración de Corrección era un administrador individual para efectos de la referida ley. 3 L.P.R.A. Ap. IX, Arts. V y VII.

 Además, aun si interpretáramos ampliamente la disposición antes transcrita de la Ley para la Administración de los Recursos Humanos en el Servicio Público para incluir dentro de su ámbito regulatorio la conducta imputada, habría que resolver que la jurisdicción de la CIPA sobre infracciones disciplinarias prevalece en el presente caso al amparo del principio de especialidad. Ello es así, pues cuando varias *614 disposiciones reglamentarias y facultades administrativas delegadas por ley a varias agencias administrativas aparentan incidir sobre el mismo asunto, prevalece el es-quema regulatorio especial sobre el esquema de carácter general. D.A.Co. v. Fcia. San Martín, 175 D.P.R. 198 (2009). Ante el hecho de que la CIPA es el foro apelativo con jurisdicción exclusiva sobre casos disciplinarios iniciados en cualquier agencia con reglamentación similar a la Policía, es indiscutible que los casos ante nuestra consideración debieron ser apelados ante la CIPA.