Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EX AGTE. RENARDO DELLA CAMERA NAVARRO #23005<br><br>*Recurrente*<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>*Recurrido* | KLRA202300564 | Revisión Administrativa procedente de la Comisión de Investigación, Procesamiento y Apelación<br><br>Caso Núm.:<br>21P-36<br><br>Sobre:<br>Expulsión |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2024.

Comparece el señor Renardo Della Camera Navarro (recurrente) mediante *Recurso de Revisión Administrativa* y nos solicita la revisión de la *Resolución* emitida el 31 de mayo de 2023, archivada y notificada el 7 de junio de 2023, por la Comisión de Investigación, Procesamiento y Apelación (CIPA). Mediante el referido dictamen, la CIPA desestimó el caso por prematuro. El 27 de junio de 2023, el recurrente presentó una *Moción de Reconsideración*, la cual fue denegada por la CIPA mediante *Resolución* emitida el 22 de agosto de 2023, notificada el 28 de septiembre de 2023.

Por los fundamentos que expondremos a continuación, **revocamos** la *Resolución* impugnada.

## I.

Según surge del expediente ante nos, por hechos presuntamente ocurridos entre los meses de marzo y abril de 2017, el Negociado de la Policía de Puerto Rico (Negociado de la Policía o recurrido) inició una investigación administrativa contra el

Número Identificador
SEN2024 _____

recurrente, quien para ese entonces, se desempeñaba como Agente de la Policía de Puerto Rico, adscrito a la División Autopistas, Área de Caguas.

Como resultado de la referida investigación, el 10 de abril de 2019, notificada el 12 de abril de 2019, el Negociado de la Policía emitió una *Suspensión Sumaria de Empleo y Sueldo y Resolución de Cargos*[1]. En esta, el Comisionado del Negociado de la Policía, señor Henry Escalera Rivera, notificó al recurrente que la conducta realizada por éste era incompatible con sus funciones como funcionario del orden público, por lo que se proponía expulsarlo del puesto que ocupaba en el Negociado de la Policía.

El 18 de junio de 2019, se celebró una vista informal administrativa ante el Oficial Examinador del Negociado de la Policía, Tnte. Cor. Nívea E. Collazo Calderón. Según se desprende del *Informe del Oficial Examinador*[2] emitido el 11 de julio de 2019, se recomendó que el caso fuera evaluado por la Oficina de Asuntos Legales para la adjudicación final e imposición de cualquier sanción contra el recurrente.

El 27 de julio de 2020, notificada el 1 de septiembre de 2020, el Negociado de la Policía emitió una *Resolución Final*[3] en la que confirmó el castigo consignado en la *Resolución de Cargos* y, en consecuencia, expulsó al recurrente de manera definitiva del Cuerpo del Negociado de la Policía. Asimismo, apercibió al recurrente que, de no estar conforme con dicha determinación, podría apelar ante la CIPA dentro del término de treinta (30) días calendario.

Insatisfecho, el 28 de septiembre de 2020, el recurrente presentó una *Apelación*[4] ante la CIPA. En esencia, alegó que se violó

---

[1] Apéndice del recurso, págs. 19-21.
[2] Apéndice del recurso, págs. 118-120.
[3] Apéndice del recurso, págs. 23-25. Cabe mencionar que en dicha *Resolución Final* se especifica que el Negociado de la Policía de Puerto Rico realizó una investigación administrativa relacionada a la conducta del recurrente como miembro de la Uniformada por hechos ocurridos el 29 de marzo de 2017.
[4] Apéndice del recurso, págs. 26-37.

su derecho al debido proceso de ley al imponérsele una suspensión sumaria de empleo y sueldo luego de transcurridos dos (2) años de los hechos imputados en su contra. Añadió que, durante la investigación administrativa no tuvo la oportunidad de defenderse de los cargos imputados en su contra y la vista administrativa no se celebró dentro de los diez (10) días siguientes a la notificación de la suspensión sumaria. Por último, el recurrente manifestó que, conforme al Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico de 17 de julio de 2013, se requiere que las investigaciones administrativas realizadas por la Superintendencia Auxiliar de Responsabilidad Profesional (SARP) se completen dentro del término de noventa (90) días a partir del recibo de la querella. Ante ello, sostuvo que en el presente caso no se cumplió con la aludida normativa al haber transcurrido tres (3) años desde que ocurrieron los presuntos hechos hasta la adjudicación final. Además, añadió que al momento de los hechos imputados se encontraba disfrutando de una licencia sin sueldo y laboraba en la Junta Reglamentadora de Telecomunicaciones.

Luego de varios trámites procesales, el 30 de junio de 2022, notificada el 5 de julio de 2022, la CIPA emitió una *Orden*[5] en la que señaló vista en su fondo para el 28 de febrero de 2023 a la 1:00pm.

Consecuentemente, el 28 de febrero de 2023, notificada el 10 de marzo de 2023, la CIPA emitió *Orden*[6] mediante la cual indicó lo siguiente:

> Se concede a la parte apelante el término de 20 días para presentar sus planteamientos de derecho que dispongan de este caso. La Policía de Puerto Rico tendrá 20 días contados a partir de la notificación del escrito para presentar su posición. De no cumplir alguna o ninguna de las partes con los plazos concedidos, el caso se dará por sometido y la Comisión resolverá.

---

[5] Apéndice del recurso, pág. 59.
[6] Apéndice del recurso, pág. 60.

El Negociado de la Policía compareció mediante *Moción en Cumplimiento de Orden y Presentación de Argumentos del Caso*[7] con fecha del 20 de febrero de 2023. En síntesis, alegó que el recurrente actuó de manera contraria a lo que un empleado del Negociado de la Policía debe actuar. Particularmente, señaló que el recurrente violó las disposiciones de la Ley Núm. 53 de 10 de junio de 1996, según enmendada, conocida como Ley de la Policía de Puerto Rico, por lo que procedía aplicar las sanciones disciplinarias establecidas en el Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 de 11 de mayo de 1990, según enmendado.

El 21 de marzo de 2023, el Negociado de la Policía compareció mediante una *Moción de Desestimación*[8]. En su escrito, señaló que el recurrente tenía hasta el 20 de febrero de 2023 para presentar sus argumentos, pero incumplió con ello. Por tanto, solicitó la desestimación del caso y/o que se confirmara la determinación emitida por el Comisionado del Negociado de la Policía, señor Henry Escalera Rivera, en cuanto a la expulsión del recurrente.

Por su parte, el 31 de marzo de 2023, el recurrente presentó una *Moción de Desestimación*[9]. Adujo que el 28 de febrero de 2023 compareció debidamente preparado a la vista señalada por la CIPA, pero no así el Negociado de la Policía al no contar con ninguno de sus testigos. Asimismo, señaló que el Negociado de la Policía incurrió en varias violaciones, a saber: 1) incumplir con la carga probatoria; 2) incumplir con los requisitos de suspensión sumaria de empleo y sueldo establecidos por ley y reglamento; 3) violar el debido proceso de ley al no celebrar una vista administrativa; 4) delegar a la Oficina de Asuntos Legales la función de recomendar si procedía o no la suspensión sumaria del recurrente; 5) confundir la

---

[7] Apéndice del recurso, págs. 61-71.
[8] Apéndice del recurso, págs. 70-71.
[9] Apéndice del recurso, págs. 72-148.

vista informal de si procede o no una suspensión sumaria con la vista administrativa final de confirmar o no la imposición de sanciones; 6) basar la expulsión del recurrente en hechos que no fueron investigados; 7) tardarse más de tres (3) años en investigar y adjudicar el presente caso; 8) solicitar más de once (11) prórrogas para realizar la investigación del caso; 9) imputar faltas que no aplican a los hechos por los cuales se expulsó al recurrente; y 10) basar la determinación en una ley y reglamento que no estaban vigentes al momento de los hechos imputados. Por tanto, el recurrente solicitó a la CIPA que declarara *Ha Lugar* su recurso de *Apelación* y revocara la determinación de expulsión emitida por el Negociado de la Policía.

Así las cosas, el 31 de mayo de 2023, notificada el 7 de junio de 2023, la CIPA emitió *Resolución* en la que desestimó el caso por prematuro. La CIPA concluyó que, según surgía de la prueba presentada, la falta núm. 30 se encontraba pendiente de investigación, por lo que el Negociado de la Policía debía concluir la investigación y celebrar la correspondiente vista administrativa informal. En cuanto a las faltas núm. 1, 16 y 27, determinó que, según surgía de la prueba presentada por las partes, no se celebró la correspondiente vista administrativa informal ante el Negociado de la Policía. En consecuencia, desestimó la *Apelación* presentada por el recurrente por prematura y devolvió el caso al Negociado de la Policía para que procediera a celebrar la vista informal.

En desacuerdo con la determinación, el 27 de junio de 2023, el recurrente presentó una *Moción de Reconsideración*[10]. En síntesis, señaló que la celebración de una vista en esta etapa de los procedimientos constituiría una actuación ultra vires por parte del Negociado de la Policía. Asimismo, arguyó que el juicio ante la CIPA

---

[10] Apéndice del recurso, págs. 149-166.

es un juicio de *novo* que subsana cualquier procedimiento inadecuado que haya realizado el Negociado de la Policía. Por último, el recurrente indicó que renunciaba a cualquier derecho que le asistiera relacionado a la celebración de una vista administrativa ante la agencia, a los fines de que el caso se dilucidara ante la CIPA.

El 22 de agosto de 2023, notificada el 28 de septiembre de 2023, la CIPA emitió una *Resolución* mediante la cual declaró No Ha Lugar la moción de reconsideración presentada por el recurrente.

Inconforme aún, el 27 de octubre de 2023, el recurrente acudió ante nos mediante el recurso de epígrafe en el que esbozó los siguientes señalamientos de error:

1. Erró la CIPA al no desestimar la falta grave número 30 relacionada a los alegados hechos del 29 de marzo de 2017 y en su lugar la devolvió al Negociado de la Policía para que fuese investigada.

2. Erró la CIPA al devolver las faltas número 1, 16 y 27 al Negociado de la Policía en lugar de desestimarlas para que fuera celebrada una vista administrativa.

3. Erró la CIPA al validar la suspensión sumaria de empleo y sueldo dos (2) años con posterioridad de ocurrir los alegados hechos y mientras el apelante continuaba trabajando.

4. Erró la CIPA al validar la investigación administrativa fuera del término establecido en su Reglamento de 90 días en crasa violación al Debido Proceso de Ley.

El 30 de noviembre de 2023, concedimos término a la parte recurrida para expresar su posición sobre los méritos del recurso. El 7 de diciembre de 2023, el Negociado de la Policía, representado por la Oficina del Procurador General de Puerto Rico, (Procurador) compareció mediante *Escrito en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

**II.**

**-A-**

Las órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos son revisadas

mediante el recurso de revisión judicial[11]. La figura jurídica de revisión judicial nos encomienda a "examinar si las decisiones de las agencias administrativas se tomaron dentro de los poderes delegados y si son compatibles con la política pública que las origina"[12]. Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial[13]. En nuestro ordenamiento se les concede gran deferencia a las determinaciones administrativas, ello en vista al gran conocimiento especializado y experiencia que las agencias ostentan[14].

Nuestro Tribunal Supremo ha expresado que, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción[15]. Por ende, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla[16].

El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción[17]. La revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial; y (3) si las conclusiones de derecho son correctas[18]. El principio de "evidencia sustancial [se refiere a] aquella prueba

---

[11] Sec. 4.1 de la LPAU, 3 LPRA sec. 9671.
[12] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).
[13] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[14] *Pagán Santiago v. ASR*, 185 DPR 341, 358 (2012).
[15] *Fuertes v. A.R.Pe.*, 134 DPR 947, 953 (1993), citando a *Murphy Bernabé v. Tribunal Superior*, 103 DPR 692, 699 (1975).
[16] *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).
[17] *Íd.* pág. 216.
[18] *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 940 (2010).

relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"[19].

Cuando una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[20]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[21].

Ahora bien, sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo[22]. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[23].

**-B-**

El Artículo 3 de la Ley de la Policía de Puerto Rico, Ley Núm. 53 de 10 de junio de 1996, según enmendada (Ley Núm. 53-1996)[24], establece el Cuerpo de la Policía de Puerto Rico y sus obligaciones, que incluyen: 1) proteger a las personas y a la propiedad; 2) mantener y conservar el orden público; 3) observar y procurar la más absoluta protección de los derechos civiles del ciudadano; 4)

---

[19] *Rolón Martínez v. A.R.P.E., supra.*
[20] *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 512 (2011).
[21] *O.E.G. v. Rodríguez y otros*, 159 DPR 98, 118 (2003).
[22] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[23] *Íd.*
[24] La referida Ley Núm. 53-1996 fue derogada por la Ley del Departamento de Seguridad Pública de Puerto Rico, Ley Núm. 20 de 10 de abril de 2017, según enmendada, 25 LPRA sec. 3501 *et seq.* (Ley Núm. 20-2017), la cual comenzó a regir ciento ochenta (180) días después de su aprobación. Sin embargo, para propósitos de la adjudicación de este recurso, citamos la derogada Ley Núm. 53-1996 debido a que los hechos en controversia surgieron durante su vigencia.

prevenir, descubrir, investigar y perseguir el delito; y 5) compeler a la observancia de las leyes y reglamentos[25].

Para asegurar el cumplimiento con estos deberes, el legislador delegó en el Superintendente la facultad de determinar por reglamento "la organización y administración de la Policía, las obligaciones, responsabilidades y conducta de sus miembros... y cualquier otro asunto necesario para el funcionamiento del Cuerpo"[26]. Asimismo, "[p]odrá ejercer toda facultad o poder para el buen funcionamiento de la Policía que no esté en conflicto con las disposiciones de las secs. 3101 *et seq.* de este título"[27].

El Artículo 23 de la Ley Núm. 53-1996, otorga al Superintendente la facultad de determinar, mediante reglamento, las faltas graves o leves de los miembros de la Policía que conllevaren acción disciplinaria. Este reglamento prescribirá la acción correspondiente con arreglo a lo establecido en el referido estatuto. El castigo a imponerse por faltas graves podrá ser uno de los siguientes: reasignación de funciones o reubicación, traslado, expulsión permanente del Cuerpo, degradación o suspensión de empleo sin sueldo por un periodo no mayor de cinco (5) meses[28].

De conformidad con lo anterior, el Superintendente aprobó el Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 de 11 de mayo de 1990, según enmendado (Reglamento 4216). Éste dispone que el Superintendente tiene la facultad de imponer sanciones disciplinarias contra un miembro del Cuerpo cuya conducta esté en contravención a sus normas[29].

El Artículo 5, Sección 5.2 del Reglamento 4216 también dispone que todo miembro de la Policía deberá: "cumplir y velar por el cumplimiento de las leyes, reglamentos y ordenanzas

---

[25] 25 LPRA sec. 3102.
[26] 25 LPRA sec. 3104 (b).
[27] 25 LPRA sec. 3104 (m).
[28] 25 LPRA sec. 3122 (b) (2).
[29] *Ramírez v. Policía de P.R.*, 158 DPR 320, 331-332 (2002).

municipales; observar en todo momento una conducta ejemplar; obedecer las órdenes legalmente emitidas por sus superiores; ser puntual en sus compromisos oficiales y diligente en el cumplimiento de su deber, actuando siempre en forma ecuánime, serena y justa; y orientar y aconsejar al público sobre el mejor cumplimiento de la ley, así como en todo lo que concierne a la seguridad pública".

Además, el Artículo 14, Sección 14.3 (2) (a) del Reglamento 4216 establece que "[e]l Superintendente tomará las medidas correctivas apropiadas cuando un miembro de la Policía de Puerto Rico incurra en violación de cualquiera de las faltas clasificadas en graves o leves. El castigo a imponerse por falta grave podrá ser uno de los siguientes: expulsión del Cuerpo, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses...".

El Artículo 4 (22) del Reglamento 4216 define "faltas graves" como "[a]quellas faltas aplicables a miembros de la Fuerza que como castigo conlleven expulsión permanente de la Policía de Puerto Rico, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses".

Según el Artículo 14, Sección 14.5 del Reglamento 4216, se considerarán faltas graves las siguientes:

> 1. Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.
>
> [...]
>
> 16. Poseer o traficar con cualesquiera de las sustancias controladas por ley, a menos que éstas sean el producto de evidencia obtenida en el desempeño de sus funciones.
>
> [...]
>
> 27. Observar conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.
>
> [...]
>
> 30. Visitar casas de prostitución o realizar cual[es]quiera otros actos que sean contrarios al pudor, honestidad y buenas costumbres de la sociedad. No incurrirá en la infracción de las Reglas 29 y 30 cuando lo haga en el cumplimiento del deber y con el consentimiento de un oficial

superior en rango. En estos casos, bajo ningún concepto deberá usarse el uniforme.

Por otro lado, el Artículo 23 de la Ley Núm. 53–1996 en lo aquí pertinente, reza de la siguiente manera:

> El reglamento determinará las faltas de los miembros de la Fuerza que conllevaren acción disciplinaria. Dichas faltas estarán clasificadas en graves o leves. El reglamento prescribirá la acción correspondiente con arreglo a lo preceptuado en las secs. 3101 *et seq.* de este título.
>
> La acción disciplinaria por faltas leves y graves se fijará en el reglamento, el cual determinará qué personas tendrán facultad para imponer sanciones en estos casos, así como el procedimiento para tramitar las mismas, sujeto a lo siguiente:
>
> (a) *Trámite de faltas leves*:
>
> [...]
>
> (b) *Trámite de faltas graves:*
>
> (1) El expediente de investigación de todo cargo grave incluirá un informe completo en torno a las imputaciones hechas contra el miembro o miembros de la Fuerza querellados. El trámite de investigación y envío del expediente se hará sin demora innecesaria. El reglamento determinará los oficiales que intervendrán en el expediente de investigación.
>
> (2) El castigo a imponerse por faltas graves podrá ser uno de los siguientes: reasignación de funciones o reubicación, traslado, expulsión permanente del Cuerpo, degradación o suspensión de empleo sin sueldo por un período no mayor de cinco (5) meses.
>
> (3) Los cargos por faltas graves serán formulados por escrito y firmados por el Superintendente o el Superintendente Asociado.
>
> (4) El Superintendente tendrá facultad para suspender temporalmente de empleo a cualquier miembro de la Fuerza mientras se practica cualquier investigación que se ordenare relativa a incompetencia, mala conducta o crimen de que se acuse a dicho miembro de la Fuerza. En tal caso, el Superintendente hará que se formulen los correspondientes cargos, sin demora innecesaria. Investigará y resolverá tales casos a la mayor brevedad posible, imponiendo el castigo que estime razonable dentro de los límites de las secs. 3101 *et seq.* de este título, o disponiendo que vuelva al servicio dicha persona con devolución de los sueldos devengados o sin ellos, durante el período de la suspensión, si a su juicio los hechos lo justificaren.
>
> (5) Cuando un miembro de la Fuerza estuviere suspendido de empleo y sueldo, por cualquier concepto, estará inhabilitado para ejercer sus funciones como tal. Tampoco disfrutará de los derechos y privilegios que por ley se conceden a miembros de la Policía mientras dure dicha suspensión.

(6) El Superintendente, luego de examinar y analizar el expediente y de dar al querellado la oportunidad de ser escuchado, resolverá el caso, absolviendo al querellado o imponiendo el castigo que estime razonable, según lo dispone la cláusula (2) de este inciso. Si se declara incurso en falta el miembro o miembros de la Fuerza concernidos, el Superintendente entregará copia al querellado del documento contentivo de su decisión, lo que se comprobará por medio de la firma de éste e indicando la fecha y hora de la notificación. El procedimiento para estos casos se determinará mediante reglamento.

(7) En todo caso donde se impongan sanciones que conlleven la suspensión de empleo y sueldo, el Superintendente, a petición del querellado, podrá conmutar dicha sanción por servicios adicionales al Cuerpo equivalente al monto de tiempo que dure la suspensión.

(8) Todo miembro de la Fuerza contra quien se haya dictado una decisión adversa por el Superintendente, podrá apelar el caso ante la Comisión de Investigación, Procesamiento y Apelación, creada mediante las secs. 171 *et seq.* del Título 1, ante la cual tendrá derecho a vista conforme a los términos de dichas secciones. La apelación deberá presentarse dentro de los treinta (30) días de recibir la notificación de castigo.[30]

**-C-**

En lo aquí concerniente, mediante la aprobación de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 LPRA sec. 171 *et seq.,* se creó la Comisión de Investigación, Procesamiento y Apelación (CIPA), organismo alterno e independiente con autoridad para intervenir en casos en los que se impute mal uso o abuso de autoridad a cualquier funcionario del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado a realizar arrestos[31].

De conformidad con lo expresamente estatuido, la CIPA está facultada para, entre otras funciones, actuar como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la ley, cuando hayan sido objeto de cualquier medida disciplinaria con relación a actuaciones cubiertas por la ley[32]. En dicho contexto y

---

[30] 25 LPRA sec. 3122.
[31] 1 LPRA sec. 172; *Calderón Morales v. Adm. de Corrección,* 175 DPR 1033 (2009).
[32] 1 LPRA sec. 172(2).

atinente a lo que nos ocupa, la referida disposición confiere a la CIPA jurisdicción apelativa exclusiva en aquellos casos en que el Superintendente de la Policía o su representante autorizado haya impuesto cualquier medida o sanción disciplinaria a un miembro de la Policía con relación a la comisión de faltas leves o graves, según se enumeran en la ley y el reglamento de dicha entidad pública[33].

En la ejecución de las funciones que le fueron conferidas, la CIPA está autorizada a celebrar vistas públicas o privadas, a ser presididas por cualquier comisionado que designe el presidente, todo con audiencia de las partes interesadas[34]. Una vez ello, el organismo en cuestión "podrá confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer"[35]. Al respecto, el estado de derecho reconoce que la vista que se celebra ante la CIPA "es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, [por lo que], [e]n este sentido, es equivalente a un juicio en sus méritos"[36]. Así pues, la misma constituye un *juicio de novo* donde el organismo tiene la oportunidad de recibir y escuchar evidencia para otorgarle el valor probatorio que a su juicio le merezca[37].

**III.**

En el presente caso, el recurrente aduce que incidió la CIPA al desestimar el caso por prematuro. Particularmente, sostiene que procedía desestimar la falta núm. 30 relacionada a los alegados hechos del 29 de marzo de 2017, por entender que estos hechos no fueron investigados. Respecto a las faltas núm. 1, 16 y 27 por

---

[33] *Íd.;* 1 LPRA sec. 173; *González y otros v. Adm. de Corrección,* 175 DPR 598 (2009); *Arocho v. Policía de P.R.,* 144 DPR 765 (1998).
[34] 1 LPRA sec. 173.
[35] 1 LPRA sec. 172.
[36] *Ramírez v. Policía de P. R.,* 158 DPR 320, 334 (2003).
[37] *Íd.*

hechos ocurridos el 20 de abril de 2017, alega que procedía que se desestimaran debido a que el foro primario no encontró causa para arresto contra el recurrente ni el Negociado de la Policía los tomó en consideración al momento de decretar la expulsión del recurrente. Además, razona que era improcedente validar la suspensión sumaria de empleo y sueldo tras haber transcurrido dos (2) años desde los presuntos hechos. Por último, adujo que erró la CIPA en su determinación por haber validado la investigación administrativa realizada por el Negociado de la Policía fuera del término de noventa (90) días establecido en su Reglamento.

Por su parte, el Procurador, aduce que el 18 de junio de 2019 se celebró la vista informal ante el Negociado de la Policía en la que el recurrente tuvo oportunidad de ser oído, exponer sus defensas y presentar evidencia. Asimismo, alega que el recurrente admitió en su *Moción de Desestimación* que la vista informal sobre la suspensión sumaria de empleo y sueldo se celebró, pero que no se celebró la vista administrativa. En virtud de lo anterior, el Procurador señala que le corresponde a la CIPA celebrar una vista para examinar la determinación del Negociado de la Policía.

Conforme a la normativa antes citada, la CIPA es el organismo administrativo encargado de atender reclamaciones sobre funcionarios del orden público —a nivel estatal o municipal— autorizados para efectuar arrestos, a los que se les haya imputado mal uso o abuso de su autoridad. La vista ante la CIPA constituye un juicio de *novo* donde el organismo tiene la oportunidad de recibir y escuchar evidencia para otorgarle el valor probatorio que a su juicio merezca[38]. La CIPA puede arribar a determinaciones de hecho o conclusiones de derecho diferentes a las emitidas por el Negociado de la Policía.

---

[38] *Íd.*

Tras examinar el tracto procesal del presente caso, concluimos que la CIPA tiene jurisdicción sobre la *Apelación* del recurrente, como autoridad legal facultada para entender de forma exclusiva en controversias relacionadas a los asuntos aquí planteados. Ante ello, colegimos que erró la CIPA al desestimar el caso por prematuro y devolverlo al Negociado de la Policía para que procediera a concluir su investigación y celebrar una vista administrativa informal[39]. En consecuencia, devolvemos el caso a la CIPA para que celebre una vista formal, de modo que se ventilen de manera definitiva todos los derechos del recurrente.

**IV.**

Por los fundamentos antes expuestos, **revocamos** la *Resolución* impugnada y devolvemos el caso a la CIPA para que proceda de conformidad con el presente dictamen.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[39] Cabe señalar que en la *Moción de Reconsideración,* presentada el 27 de junio de 2023 ante la CIPA, el recurrente manifestó expresamente su renuncia a cualquier derecho que le asistiera relacionado a la celebración de una vista administrativa ante la agencia a los fines de que el caso se dilucidara ante la CIPA. Véase, apéndice del recurso, pág. 151.