Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **AGTE. JULIO FIGUEROA HERNÁNDEZ #35178**<br><br>Recurrido<br><br>v.<br><br>**POLICÍA DE PUERTO RICO**<br><br>Recurrentes | KLRA202500250 | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Comisión de Investigación, Procesamiento y Apelación<br><br>Caso Núm.<br>**18P-80**<br><br>Sobre: **Suspensión de diez (10) días de empleo y sueldo** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de junio de 2025.

Comparece ante nos, el Negociado de la Policía de Puerto Rico, en adelante, Negociado o recurrente, solicitando que revoquemos una *"Resolución"* de la Comisión de Investigación, Procesamiento y Apelación, en adelante, CIPA, notificada el 26 de febrero de 2025. En el referido dictamen, la CIPA declaró *"Ha Lugar"* la apelación presentada por el Agente Julio Figueroa Hernández, en adelante, Agente Figueroa o recurrido.

Por los fundamentos que expondremos a continuación, *revocamos* la determinación recurrida.

**I.**

Para el año 2013, el Agente Figueroa, se encontraba adscrito a la División de Violencia Doméstica de Bayamón.[1] Durante este tiempo, hubo un patrón significativo de ausencias en la referida división de la Policía de Puerto Rico, en adelante, PPR, propiciándose así una investigación interna.[2] Como parte de esta investigación, el

---

[1] Apéndice del recurso, pág. 3.
[2] *Id.*

Agente Figueroa fue citado a declarar y posteriormente a someterse a un examen de polígrafo, rehusándose a ambas.[3]

Es importante destacar que, previo a la iniciación del caso administrativo que ahora nos ocupa, un grupo de agentes de la misma División a la que pertenecía el recurrente, sin incluirlo a él, solicitó y obtuvo del Tribunal de Primera Instancia, Sala Superior de San Juan, una Sentencia Declaratoria.[4] En el referido dictamen del 23 de agosto de 2013, el Foro Primario sostuvo la constitucionalidad del polígrafo compulsorio a los agentes de la PPR. Los agentes recurrieron ante un panel hermano de este Foro, quienes confirmaron la determinación apelada.[5]

Ahora bien, el 2 de febrero de 2016, el recurrido recibió una misiva del Superintendente de la PPR.[6] En la misma, este le informó que se proponía suspenderlo de empleo y sueldo por un periodo de diez (10) días, por violación a varios reglamentos de la PPR. El Agente Figueroa solicitó una Vista Administrativa, la cual se celebró el 8 de febrero de 2017.[7] Sin embargo, el 20 de marzo de 2018, el recurrido recibió otra notificación informándole que se confirmaba la sanción, y se le suspendía por diez (10) días sin sueldo.

Inconforme, el 2 de mayo de 2018, el Agente Figueroa presentó una *"Apelación"* ante la CIPA.[8] Poco después, la referida Comisión ordenó la paralización de los procedimientos en el caso, en virtud de la radicación de quiebra del Gobierno de Puerto Rico.[9] Mediante *"Moción de Reconsideración"*, el recurrente se opuso infructuosamente a la paralización.[10] El 15 de junio de 2023, la CIPA ordenó al recurrido a indicar si deseaba continuar con el proceso

---

[3] Apéndice del recurso, pág. 3.
[4] KPE2013-3647.
[5] KLAN201301855.
[6] Apéndice del recurso, págs. 3-4.
[7] *Id.*, pág. 7.
[8] *Id.*, pág. 11.
[9] *Id.*, pág. 12.
[10] *Id.*

apelativo.[11] El 5 de julio de 2023, el Agente Figueroa presentó *"Moción en Cumplimiento de Orden"*, expresando su interés en proseguir.[12]

Posteriormente, se pautó la celebración de la vista en su fondo para el 5 de junio de 2024.[13] Sin embargo, la vista fue suspendida y ordenó al Negociado a presentar por escrito una *"Resolución Sumaria"* en veinte (20) días. Además, indicó que el Agente Figueroa debía replicar a la misma en igual término, una vez notificado el escrito de la recurrente.[14] Así las cosas, el 24 de junio de 2024, el Negociado presentó su moción de *"Resolución Sumaria"* en la que solicitó al Foro Recurrido que declarara *"No Ha Lugar"* la apelación del recurrente. El 18 de julio de 2024 el recurrente presentó una *"Réplica a Moción de Resolución Sumaria".*[15] El 31 de julio de 2024, el Negociado presentó una *"Solicitud para que se Dicte Resolución Sumaria".*[16] A esta última, se opuso el Agente Figueroa el 1 de agosto de 2024.[17] Luego, el 5 de agosto de 2024, el Negociado presentó su *"Oposición a la Réplica a Resolución Sumaria y Solicitud para que se dicte Resolución".*[18]

Finalmente, el CIPA notificó una *"Resolución Sumaria"* el 26 de febrero de 2025.[19] En su dictamen, la Comisión recurrida revocó la suspensión impuesta al apelante, porque el Negociado no celebró una vista final y por haber ausencia total de prueba que sostenga la medida disciplinaria. Inconforme, el 17 de marzo de 2025, el Negociado solicitó ante la CIPA una reconsideración que, según el escrito del recurrente, no fue atendida durante los quince (15) días subsiguientes.[20]

---

[11] Apéndice del recurso, pág. 17.
[12] *Id.*
[13] *Id.* pág. 19.
[14] *Id.* pág. 25.
[15] *Id.*, pág. 106.
[16] *Id.*, pág. 110.
[17] *Id.*, pág. 114.
[18] *Id.*, pág. 115.
[19] *Id.*, pág. 117.
[20] *Id.*, pág. 123.

Así las cosas, el 30 de abril de 2025, el Negociado compareció ante esta Curia mediante *"Recurso de Revisión Administrativa"*, haciendo los siguientes señalamientos de error:

**PRIMER ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Apelación presentada por el Agte. Julio Figueroa Hernández fundada en que el Negociado de la Policía no anejó a su solicitud de resolución sumaria prueba fehaciente en torno a hechos materiales esenciales, no empece la parte apelante en su escrito de réplica haber reconocido y adoptado como suyos los hechos materiales incontrovertidos propuestos por el Negociado de la Policía en su solicitud, admitiendo así estos, por lo que, para propósitos de la atención de la resolución sumaria, tales hechos se dan como probados. Ante ello, correspondía a la CIPA atender la solicitud de resolución sumaria, y en consideración a sus fundamentos, denegar sumariamente la apelación presentada por la parte apelante-recurrida.

**SEGUNDO ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Apelación presentada por el Agte. Julio Figueroa Hernández y revocar la medida disciplinaria de suspensión de empleo y sueldo impuesta a éste, ello sin haber cumplido con celebrar una vista en su fondo del caso, según lo exige su Ley Orgánica.

Mediante *"Resolución"* del 5 de mayo de 2025, concedimos a la parte recurrida hasta el 30 de mayo de 2025, para presentar su posición en cuanto al recurso, de acuerdo con lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. El Agente Figueroa no compareció ante nos en respuesta al recurso de marras.

**II.**

**A. Revisión Administrativa**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las

facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez, Torres v. Consejo Titulares et al.,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 2024 TSPR 64, 213 DPR ___ (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Id.

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalqcua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Katiria's Café, Inc vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. USAA Fed.*

*Savs. Bank*, 2024 TSPR 70, 213 DPR___ (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transp. Sonell v. Jta. Subastas ACT*, supra; *Otero Rivera v. USAA Fed. Savs. Bank*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM*, supra, pág. 175.

Por su parte, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. A esos efectos, nuestro Tribunal Supremo aclaró recientemente que, a través de la precitada disposición, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las

agencias administrativas. *Vázquez, Torres v. Consejo Titulares et al.,* supra.

En síntesis, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción.

Finalmente, por ser relevante al caso de autos, nos referimos a lo dispuesto por la LPAUG con relación a los dictámenes sumarios de las agencias. En la Sección 3.7 de la LPAUG, supra, sec. 9647, dispone que:

> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

### B. Negociado de la Policía de Puerto Rico

La Ley de la Policía de Puerto Rico de 1996, Ley Número 53 de 10 de junio de 1996, 25 LPRA ant. sec. 3101 *et seq.*,[21] en adelante, Ley de la PPR, fue aprobada, en aquel entonces, para ajustar el cuerpo policiaco a las necesidades administrativas y operacionales del presente y el futuro. Para lograrlo, el Artículo 3 de la Ley de la PPR, 25 LPRA sec. 3102, estableció el cuerpo de la Policía de Puerto Rico y sus obligaciones, en las cuales incluyó:

---

[21] El 10 de abril de 2017, entró en vigor La Ley del Departamento de Seguridad Pública de Puerto Rico, 25 LPRA sec. 3501 *et seq.*, Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia de la precitada Ley, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado estatuto.

[P]roteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, prevenir, descubrir, investigar y perseguir el delito y, de la esfera de sus atribuciones, compeler obediencia a las leyes y ordenanzas municipales, y reglamentos que conforme a éstas se promulguen.

De igual manera, para asegurar el cumplimiento de estos deberes, el legislador delegó en el Superintendente (ahora Comisionado) la facultad de determinar por reglamento "la organización y administración de la Policía, las obligaciones, responsabilidades y conducta de sus miembros ... y cualquier otro asunto necesario para el funcionamiento del Cuerpo." Ley de la PPR, supra, sec. 3104. Asimismo, "[p]odrá ejercer toda facultad o poder para el buen funcionamiento de la Policía que no esté en conflicto con las disposiciones de las secs. 3101 *et seq.* de este título." *Id.*

Por otra parte, la Ley en cuestión otorgaba al Superintendente la facultad de determinar, mediante reglamento, las faltas graves o leves de los miembros de la Policía que conllevaren acción disciplinaria. Este reglamento prescribirá la acción correspondiente con arreglo a lo establecido en el referido estatuto. El castigo por faltas graves podrá ser uno de los siguientes: reasignación de funciones o reubicación, traslado, expulsión permanente del Cuerpo, degradación o *suspensión de empleo sin sueldo por un periodo no mayor de cinco (5) meses.* Ley de la PPR, supra, sec. 3122.

La Ley en cuestión, facultó al Superintendente de la Policía a promulgar los reglamentos necesarios para la consumación de los deberes de la PPR. A tenor con ello, se estableció el Reglamento para Establecer las Normas y Procedimientos para el Uso y Manejo del Polígrafo en la Policía de Puerto Rico, Reglamento Núm. 6507, del 20 de agosto de 2002, en adelante, Reglamento 6507. Surge de las definiciones del precitado Reglamento, que el polígrafo es un

"[i]nstrumento científico que registra reacciones fisiológicas de una persona a quien se le administra la prueba de polígrafo. El polígrafo registra simultáneamente la actividad respiratoria, la resistencia o conductividad galvánica cutánea y la actividad cardiovascular". Artículo 4(F) del Reglamento 6507, supra. En este cuerpo reglamentario, se establece que el uso del polígrafo está orientado a asistir investigaciones internas, verificando, corroborando o refutando declaraciones. Artículo 5(C) del Reglamento 6507, supra.

Posteriormente, el 26 de septiembre de 2007, se aprobó el Reglamento Núm. 7410, en adelante, Reglamento 7410, con el propósito de enmendar varios Artículos del Reglamento 6507, supra. Entre los enmendados se encuentra el Artículo 10(M), intitulado "Pruebas Relacionadas con Investigaciones Internas y/o Administrativas". En el antedicho epíteto, se reglamenta la administración de la prueba del polígrafo en investigaciones internas. Dispone quién la administrará y autorizará, la necesidad de consentimiento escrito, que la investigación debe estar dirigida a las labores del empleado, el manejo de los resultados, entre otros asuntos procesales. *Id.*

Finalmente, destacamos que el Artículo 7(M)(6) del Reglamento 7410, supra, *establece que el empleado que se oponga a someterse a una prueba de polígrafo incurre en una falta grave.*

i.    **Reglamento de Personal**

Previo a la aprobación de la Ley de la PPR, supra, la Legislatura de Puerto Rico aprobó la Ley de la Policía, Ley Número 26 de 22 de agosto de 1974. Esta fue creada con el fin de establecer una estructura administrativa organizada y de óptimo reclutamiento y adiestramiento. Un año más tarde, se aprobó la Ley de Personal del Servicio Público, Ley Número 5 del 14 de octubre de 1975. Este estatuto buscaba que el reclutamiento en el Gobierno de Puerto Rico consistiera en una empleomanía competente y apta.

Al amparo de estos dos estatutos, el 11 de mayo de 1990 se creó el Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216, en adelante, Reglamento 4216. Según la introducción del mismo, el precitado Reglamento procuró garantizar una administración de personal efectiva, que sirviera a los mejores intereses de la política pública del país.

Ahora bien, por ser relevante al caso ante nos, es importante destacar que la Sección 14.5 del Reglamento 4216, supra, atiende la identificación de faltas graves administrativas por parte del cuerpo policiaco de la PPR. En su inciso (14), el mencionado artículo dispone como una falta grave "[d]esacatar y desobedecer órdenes legales comunicadas en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar actos de insubordinación o indisciplina". Además, la Sección 14.3 del Reglamento 4216, supra, faculta al Superintendente a imponer medidas disciplinarias, entre estas, la *suspensión de empleo y sueldo.*

### C. Ley de la Comisión de Investigación, Procesamiento y Apelación (CIPA)

La Ley de la Comisión de Investigación, Procesamiento y Apelación, Ley Núm. 32-1972, 1 LPRA sec. 171 *et seq.*, en adelante, Ley de la CIPA, se promulgó con el fin de crear una comisión para atender los casos de mal uso o abuso de autoridad de ciertos funcionarios públicos y fungir como foro apelativo en determinados casos. *Arocho v. Policía de PR*, 144 DPR 765, 769-770 (1998). La CIPA actuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los miembros de la uniformada cuando se les haya impuesto cualquier medida disciplinaria con relación a una falta grave. *Ramírez v. Policía de PR*, 158 DPR 320, 332 (2002); Art. 2(2) de la Ley Núm. 32-1972, 1 LPRA

sec. 172. En virtud de las anteriores funciones y facultades, el Art. 3 de la Ley Núm. 32-1972, 1 LPRA sec. 173, establece que la CIPA tiene autoridad para:

> (1) Realizar cualquier investigación autorizada por esta ley, en cualquier sitio en el Estado Libre Asociado de Puerto Rico;
> (2) celebrar las reuniones que considere necesarias;
> (3) celebrar vistas públicas o privadas, las cuales podrán ser presididas por cualquier Comisionado que designe el Presidente y con audiencia de las partes interesadas.

La vista celebrada ante la CIPA es una especie de juicio *de novo*, donde el organismo administrativo tiene la oportunidad de escuchar toda la evidencia y otorgarle el valor probatorio que a su juicio merezca. *Ramírez v. Policía de PR*, supra*,* pág. 332. En lo pertinente al proceso de la vista, el Art. 2 (2) de la Ley Núm. 32-1972, supra, estableció que "[l]a Comisión, luego de celebrar la vista correspondiente, según lo dispuesto en el Art. 3, Inciso (3), podrá confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer". Sobre la vista celebrada ante la CIPA, nuestro Tribunal Supremo aclaró:

> Nótese, pues, que la vista que se celebra ante la C.I.P.A. es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, y las determinaciones de hecho de esa agencia están sujetas, únicamente, al limitado ámbito de la revisión judicial. En este sentido, es equivalente a un juicio en sus méritos.
> *Ramírez v. Policía de PR*, supra, págs. 333-334.

Por consiguiente, la celebración de la vista ante la CIPA logra el cumplimiento cabal con el debido proceso ley y garantiza el derecho a ser oído de los empleados.

Ahora bien, el 1 de diciembre de 2010, se aprobó el Reglamento Número 7852, Reglamento para la Presentación,

Investigación y Adjudicación de Querellas y Apelaciones ante la Comisión de Investigación, Procesamiento y Apelación, en adelante, Reglamento 7852. En el mismo, se establecieron las normas que regulan los procesos ante la CIPA.

El referido Reglamento dispone que la CIPA, tiene la facultad de disponer o desestimar de manera sumaria una apelación, a solicitud de parte o motu proprio. Artículo 26 del Reglamento 7852, supra. El precitado Artículo establece que la CIPA puede proceder de esta manera cuando la parte promovente de una determinación sumaria "no plantea hechos que justifiquen la concesión de un remedio, o si no habiendo controversia real en los hechos, como cuestión de derecho, procede se dicte resolución a favor de la parte promovente".

### D. Derecho a la intimidad

El Art. II, Sec. 8 de nuestra Constitución, supra, dispone que "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Esta sección consagra expresamente el derecho a la intimidad en Puerto Rico. *Amadeo Ocasio v. Pierluisi Urrutia*, 211 DPR 278 (2023); *Vega et al. v. Telefónica*, 156 DPR 584, 601-602 (2002); *El Vocero de P.R. v. E.L.A.,* 131 DPR 356 (1992); *Figueroa Ferrer v. E.L.A.*, 107 DPR 250 (1978).

De acuerdo con esto, nuestro más Alto Foro ha establecido que el derecho constitucional a la intimidad es uno de la más alta jerarquía en nuestro ordenamiento jurídico. No obstante, no es un derecho absoluto ni "vence a todo valor en conflicto bajo todo supuesto posible". *Vega et al. v. Telefónica*, supra, a la pág. 602; *E.L.A. v. P.R. Tel. Co.,* 114 DPR 398, 401 (1983). Por lo tanto, ante un reclamo de violación a este derecho constitucional, "la cuestión central es si la persona tiene derecho a abrigar, donde sea, *dentro*

*de las circunstancias del caso específico*, la expectativa de que su intimidad se respete". (Énfasis suplido.) *Vega et al. v. Telefónica*, supra, pág. 602; *E.L.A. v. P.R. Tel. Co.*, pág. 402.

Ahora bien, en el contexto del caso de marras, resulta necesario que evaluemos el derecho fundamental a la intimidad de un agente del orden público, en contraposición a los intereses del Estado. En el caso de *Arroyo v. Rattan*, 117 DPR 35 (1986), nuestro Alto Foro evaluó precisamente el grado de intromisión que representaba la prueba del polígrafo a un empleado que trabajaba en la industria privada como ebanista, y fue suspendido de su empleo por negarse a tomar una prueba de polígrafo. A esos efectos, concluyó que la violación a la intimidad de un individuo mediante esta prueba "sólo puede tolerarse cuando no existan medios menos drásticos para la protección de intereses apremiantes del Estado". *Arroyo v. Rattan*, supra, pág. 61.

Nuestra más Alta Curia ha expresado que "la protección constitucional del derecho a la intimidad del empleado en Puerto Rico es mucho más abarcadora que en el ámbito federal. Aquí hemos reconocido expresamente que al empleado, *tanto público* como privado, le cobija una expectativa razonable de intimidad en el lugar de trabajo". *Vega et al. v. Telefónica*, supra, pág. 607. A estos fines, indicó que el patrono debe hacer un "balance entre el derecho del empleado a la intimidad en el lugar de trabajo y el del patrono a la protección, seguridad y disfrute de su propiedad". *Id.*

También, es responsabilidad de los Tribunales que tienen una controversia de esta naturaleza evaluar el grado de intromisión que resulte a la intimidad de una persona la acción imputada. *Asoc. Pro Ctrl. Acc. C. Maracaibo v. Cardona Rodríguez y otros*, 144 DPR 1, 31 (1997); *Arroyo v. Rattan*, supra, pág. 76.

En síntesis, la deferencia al derecho constitucional de la intimidad ***solo cede en circunstancias especiales en las que***

***están en juego los intereses apremiantes del Estado***. Lo cierto es que cuando en una controversia judicial se levanta el derecho a la intimidad, los tribunales están llamados a realizar un balance entre este y los intereses del Estado. *Amadeo Ocasio v. Pierluisi Urrutia,* supra, pág. 278; *Lozada Tirado v. Testigos de Jehová*, 177 DPR 893, 918 (2010).

### III.

El recurrente comparece ante esta Curia impugnando la *"Resolución"* de la CIPA, en al que declaró *"Ha Lugar"* la apelación del Agente Figueroa. Con esta decisión, la agencia recurrida revocó la sanción disciplinaria impuesta por el Negociado. Aduce la recurrente que la CIPA debió sostener sumariamente la misma. *Le asiste la razón.*

La agencia recurrida es un foro administrativo revisor con la facultad de atender los recursos ante sí de manera sumaria. Surge de los documentos que obran en autos que la CIPA ordenó al Negociado a presentar una solicitud de resolución sumaria, y al Agente Figueroa a replicar a la misma. En cumplimiento, la recurrente radicó un escrito en el que, arguyó que la agencia en cuestión debía declarar *"No Ha Lugar"* la apelación del recurrido, estableciendo catorce (14) hechos no controvertidos. Entre estos, dispuso los siguientes:[22]

1. El recurrido es uno de los agentes que se ausentó del trabajo en la División de Violencia Doméstica, el 18 de abril de 2013.

2. Este evento suscitó una investigación administrativa de la PPR.

3. Que la PPR está autorizada a realizar pruebas de polígrafo como parte de sus investigaciones administrativas.

4. El recurrido se negó a someterse a una prueba de polígrafo.

5. Que el empleado que se negare a someterse a una prueba de polígrafo incurre en una falta administrativa grave.

---

[22] Apéndice del recurso, págs. 26-27.

Para las catorce (14) determinaciones de hechos no controvertidos, el Negociado anejó la documentación que los sustenta.[23]

Por su parte, el recurrido en su réplica, expresó que tomaba "como hechos no controvertidos los hechos planteados en los acápites 1 al 13 de los Hechos Incontrovertidos presentados por la Parte Apelante".[24] *El Agente Figueroa aceptó trece (13) de los catorce (14) hechos propuestos y fundamentados por el Negociado,* incluyendo los reseñados por nosotros previamente. Es decir, en su contestación, aceptó haberse ausentado a su jornada laboral el día 18 de abril de 2013, que este hecho lo hizo objeto de una investigación administrativa, que la PPR está facultada para realizar pruebas de polígrafo en estos casos y que negarse a ello es una falta administrativa grave. Arguyó, además, que el único asunto litigioso era la constitucionalidad de castigar a un policía por negarse a someterse a una prueba de polígrafo.

Evaluado lo anterior, justipreciamos que la CIPA debió resolver de manera sumaria la controversia ante sí. Sin embargo, en su dictamen, impuso sobre el Negociado, el peso de presentar una prueba que no estaba en controversia, como, por ejemplo, si el Agente Figueroa en efecto, debió comparecer a su trabajo el 18 de abril de 2013. No solo esto nunca estuvo en controversia, sino que el mismo recurrido lo acepta como hecho incontrovertido en su réplica a la solicitud de resolución sumaria.

Ahora bien, el asunto que debió atender, y con el que ahora nos ocupamos, es la constitucionalidad del Reglamento de la PPR que faculta al Negociado a castigar a los agentes que se rehusen a someterse a una prueba de polígrafo. Para ello, debemos remitirnos, como primera consideración, a lo resuelto por un panel hermano en

---

[23] Apéndice del recurso, págs. 35-105.
[24] *Id.*, pág. 106.

el caso KLAN201301855. Si bien es cierto, como aduce el recurrido, que él no fue parte de este caso, por lo que el mismo no lo vincula, no es menos cierto que se atendió la misma controversia que le presentaron las partes de este caso a la CIPA.

En el mencionado caso, el Tribunal de Apelaciones tuvo ante su consideración, la misma investigación administrativa que propulsó las ausencias en masas que surgieron el 18 de abril de 2013, pero con otros agentes actores. A este Foro se le cuestionó el mismos asunto de constitucionalidad. En su dictamen, nuestro panel hermano sostuvo la constitucionalidad del Reglamento de la PPR que obliga a los agentes que son objeto de investigaciones administrativas a someterse a pruebas de polígrafo. Razonó en su *"Sentencia"* que en el balance de intereses entre el derecho a al intimidad de los agentes, y el asunto de seguridad pública que representan las ausencias en masas, el derecho de los primeros debe ceder. Este análisis nos persuade.

Según esbozamos previamente, cuando un Tribunal tiene una controversia ante sí sobre el derecho a la intimidad, debe sopesar el grado de intromisión a la intimidad de un sujeto. Nuestro Alto Foro y este Tribunal ya han hechos este análisis en el contexto de la prueba del polígrafo. En más de una ocasión, ha sostenido su constitucionalidad. Concluimos que, en el caso de autos, no existe razón para desviarnos del análisis jurídico que ha ceñido este asunto.

**IV.**

Por los fundamentos antes expuestos, revocamos el dictamen recurrido, declaramos *"Con Lugar"* la solicitud de *"Resolución Sumaria"* del Negociado. En consecución, declaramos *"No Ha Lugar"* la apelación del recurrido ante la CIPA y confirmamos las sanciones impuestas al Agente Figueroa por la recurrente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones